THE PEOPLE *ex rel.* Charles W. McCall, County Treasurer, Appellant, *vs.* C. SCHWANK *et al.* Appellees.

*Opinion filed December 15, 1908.*

1. DRAINAGE—*when drainage commissioners must make a new classification.* If drainage commissioners, under the authority of section 21 of the Farm Drainage act, enter of record their finding that the classification under which the district has been acting is not fairly adjusted, it is their duty to disregard such classification and make a new one; and the fact that their new classification is quashed on *certiorari* does not authorize them to abandon that duty and levy an assessment upon the old classification.

2. SAME—*jurisdiction of commissioners is confined to territorial limits of district.* A drainage assessment determined upon by farm drainage commissioners at a meeting in an attorney's office outside the limits of the district, at which the clerk of the district was not present and of which he had no notice, is void as an assessment made by individuals having no taxing power at all, and such assessment cannot be validated by ratification at a meeting of the commissioners held within the district after the assessment is levied and has become payable.

3. SAME—*it is the classification and not the spreading of an assessment which affects rights of land owners.* It is the classification of the lands of a drainage district, and not the mere spread-

ing of the assessment, that determines the rights and liabilities of the land owners; and if a classification has been acquiesced in by the land owners for many years, any objection as to its having been made by commissioners who were land owners of the district will be regarded as waived.

APPEAL from the County Court of Whiteside county; the Hon. HENRY C. WARD, Judge, presiding.

H. H. WAITE, and C. L. & C. E. SHELDON, for appellant.

JARVIS DINSMOOR, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The county collector of Whiteside county applied to the county court of said county, at the May term, 1908, for judgment against lands of the appellees and an order of sale for an unpaid assessment levied by the commissioners of Union Drainage District No. 5 of the towns of Montmorency and Coloma, in said county, a district organized under the Farm Drainage act. The appellees appeared and filed objections, some of which were sustained and judgment was refused. The record was brought to this court by appeal.

Union Drainage District No. 5 of the towns of Montmorency and Coloma was organized in 1883. There was at that time a drainage district known as Drainage District No. 3 of Montmorency, which had been organized in 1881 to drain lands in that town. There was no outlet for the main ditch of that district, and when the Union Drainage District No. 5 of the two towns was organized, the lands in the existing Drainage District No. 3 of Montmorency were included with other lands in that town and the town of Coloma. The main ditch of the union district connected with the main ditch previously constructed by district No. 3 and furnished an outlet for the waters of that district. The

commissioners of highways of the two towns, who were *ex officio* drainage commissioners, on December 12, 1885, made a classification of all the lands in the union drainage district, including the lands in district No. 3, and upon this classification assessments were spread and the contemplated improvements for the purpose of drainage were made. District No. 3 of Montmorency kept up its organization as a district, and in September, 1903, the drainage commissioners of the union drainage district held a meeting, at which it was determined to repair and improve the drainage works of the district and to levy an additional assessment therefor. They then determined and entered of record their finding that it appeared from experience and results that the former assessments were not fairly adjusted on the several tracts of land in said district according to benefits contemplated at the time the first classification was made, and that they disregarded the proportions of the former assessment and determined to classify the lands in said district on a graduated scale, according to the benefits received and to be received by the drainage work in the district. In pursuance of that finding and determination they made a new classification of all the lands in the district and spread an assessment on that classification on October 13, 1903. The land owners and drainage commissioners of district No. 3 filed in the circuit court a petition for a writ of *certiorari* to quash the record of the orders classifying and assessing the lands of the district, alleging that the classification was void because the commissioners of the union district had no authority to classify lands included in said district No. 3 and that the commissioners failed to give legal notice of the assessment. At the January term, 1904, the circuit court quashed the classification and the assessment roll based on it. On October 12, 1907, the commissioners of the union drainage district met at the office of their attorneys in Sterling, outside of the district. The clerk had no notice of the meeting and was not present, but wrote a record of the

meeting from minutes mailed to him from the office of the attorneys and at the direction of one of the commissioners. The record shows a resolution reciting that the classification made on October 13, 1903, had been quashed by the circuit court, leaving the former classification of the lands in the district in force, and that under these facts a new classification was not necessary and proceedings for a new classification should be discontinued. On November 2, 1907, the commissioners again assembled at the same place in the absence of the clerk and resolved to levy an assessment of $900 upon the lands of the district, to be due and payable December 1, 1907, and employed the attorneys to make the assessment. On November 11, 1907, the commissioners again met at the office of the attorneys and adopted an assessment roll of that date prepared by the attorneys, amounting to $900, based on the original classification, with some minor changes previously made. The clerk was not only absent from all these meetings, but he had no notice of any of them and no knowledge of what was done and wrote the record from minutes sent to him by the attorneys. On February 26, 1908, the commissioners met in the district and the clerk was present. They then passed a resolution confirming the assessment previously adopted on November 11, 1907, and made payable on December 1, 1907, and approved and ratified the action taken at the meetings held outside of the district. The assessment roll included only that part of the lands in the union drainage district not within the limits of district No. 3 of Montmorency and left out the lands in said district No. 3 which were included in the organization of the district and classified and assessed as lands of the district.

Section 21 of the Farm Drainage act provides that in any district where a classification has once been made, and the commissioners believe, from experience and results, that such former classification was or is not fairly adjusted on the several tracts of land according to benefits which may

be derived from new or additional assessments, then the commissioners shall disregard such former classification and make a new classification in accordance with justice and right. The commissioners of the union drainage district believed, from experience and results, that the classification first made was not fairly adjusted and entered their finding to that effect in their record. It was then their duty to disregard the former classification and make a new one in accordance with justice and right, and the land owners had a right to have that duty performed. After a finding that a classification was not fairly adjusted nothing is left to the discretion of the commissioners, and the provisions of the statute designed for the protection and benefit of the land owners cannot be disregarded. (*People* v. *Warren,* 231 Ill. 518.) The commissioners attempted to make a new classification in the discharge of their duty, but it was quashed by the court upon an inspection of the record returned in obedience to the writ of *certiorari.* The fact that the new classification proved abortive for lack of notice, or any other reason, did not alter the finding that the first classification was not properly adjusted as between the land owners and did not authorize the commissioners to abandon their duty to make a classification in accordance with justice and right. The order quashing the classification merely set it aside and the assessment based upon it, and did not destroy the original organization of the district more than twenty years before, which had been acquiesced in for that length of time by all owners of lands in the district which had been classified and assessed. The assessment was spread upon a portion, only, of the lands included in the district as they had been classified for assessment with the other lands, and the commissioners had decided that such classification was not properly adjusted between the land owners. The duty of making a new classification had not been performed and the assessment was not based on a valid classification of the lands in the district.

The meetings at which the assessment was determined upon and the attorneys employed to make it, and at which it was adopted, were held outside of the district, in the absence of the clerk and without notice to him. The minutes were furnished to the clerk by the attorneys, and from them he wrote the record. These proceedings were void and without jurisdiction, for the reason that the jurisdiction of drainage commissioners is confined to the territorial limits of the district. (*People* v. *Carr*, 231 Ill. 502.) The resolution passed at the meeting of February 26, 1908, purporting to confirm the assessment and ratify the void acts, was not effective for that purpose. Mere defects or irregularities in the exercise of the taxing power might, perhaps, be subsequently cured, but in this case the assessment was levied by three individuals who were not authorized to exercise the taxing power at all, and the resolution was adopted long after the attempted levy and after it was to become due and payable. Under those circumstances the resolution could not validate the assessment.

It is contended by counsel for appellees that the commissioners had no power to levy an assessment because they were land owners in the district. It is the classification of the lands which determines the rights and liabilities of the land owners, and the spreading of an assessment is nothing but a mathematical computation, which determines no right and affects no interest. The classification made in 1883 was acquiesced in for over twenty years by the land owners, and if it were still a valid classification, any objection to the manner in which it was made would be regarded as waived. No classification was made by the present commissioners, and the question of their power in that respect is not involved in this appeal.

The judgment of the county court is affirmed.

*Judgment affirmed.*