NOAH COSBY *et al.* Appellants, *vs.* CHARLOTTE L. BARNES *et al.* Appellees.

*Opinion filed October 25, 1911.*

1. APPEALS AND ERRORS—*all petitioners need not join in appeal from order dismissing petition to dissolve drainage district.* Under section 97 of the Practice act of 1907 and paragraph 82 of the Courts act it is not essential to the right to appeal from an order dismissing a petition to dissolve a drainage district that all petitioners join in the appeal, as each petitioner, alone or with others, may pray an appeal.

2. DRAINAGE—*what are "assessed" lands, as meant by the act concerning dissolution of districts.* The classification of lands under the Farm Drainage act determines what lands are charged with the burden of paying the benefits, and all lands which are placed above the zero class in the classification are therefore "assessed" lands, as meant by the act of 1889, concerning the dissolution of drainage districts, even if no assessment has been levied and spread.

3. SAME—*what is sufficient prima facie showing of title in petitioners.* The classification roll and other files in the proceedings for the organization of a drainage district, when introduced in evidence in support of a petition to dissolve the district, are *prima facie* evidence of the title of petitioners, and, unless this showing of title is contradicted, the only question for the court is whether the signers of the petition constitute four-fifths of the adult land owners of the district, owning three-fourths of the assessed lands.

4. SAME—*adult land owners of district must be bona fide owners.* In determining the number of adult land owners in a drainage district, only actual *bona fide* owners can be counted.

5. SAME—*a petition to dissolve drainage district may be signed by an agent of land owners.* A petition to dissolve a drainage district may be signed by an attorney or agent of the land owner.

6. SAME—*highway commissioners may sign petition to dissolve.* Where parts of highways in three towns are included in a drainage district, the highway commissioners of each town may, in their corporate capacity, sign a petition to dissolve the district, and in such case each board counts as one land owner and the signatures of two or more members of the board count as the signature of the board.

7. SAME—*what is a sufficient compliance with statute concerning indebtedness.* If the amount in which a drainage district is indebted is paid to the clerk of the district and is paid by him to the creditors before the entry of the final order in a proceeding to dissolve the district, there is a sufficient compliance with the act of 1889, which requires that no indebtedness shall exist when a district is dissolved.

APPEAL from the County Court of Logan county; the Hon. JAMES T. HOBLIT, Judge, presiding.

S. L. WALLACE, HUMPHREY & ANDERSON, and McCORMICK & MURPHY, for appellants.

KING & MILLER, and BEACH & TRAPP, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Salt Creek Special Drainage District was organized in Logan county under the Farm Drainage act in 1908. The commissioners of the district classified the lands contained within its boundaries. At the time and place fixed by the commissioners, as provided by law, objections to the classification were heard and certain corrections made. The classification roll as finally adopted showed estimated benefits for the entire district of $107,833.54. From that classification as finally made certain interested owners of land in said district, and certain commissioners of public highways included in the district, appealed to the county court of said

county, which said appeals had not been disposed of at the time of this hearing in the lower court. October 22, 1910, Noah Cosby and other land owners in said district filed a petition in said county court praying for the dissolution of the district under the provisions of the act of 1889 providing for the dissolution of drainage districts. (Hurd's Stat. 1909, p. 918.) Certain owners (appellees here) entered their limited appearances and objected to the jurisdiction of the court to hear said petition for dissolution. After a hearing these objections were overruled and appellees filed a traverse or answer to said petition, stating, in substance, that the petition was not signed by four-fifths of the adult land owners in said district owning three-fourths in area of the assessed lands therein; that no assessment had been levied and spread against the lands owned by the petitioners; that an indebtedness existed against said district and remained unpaid at the date of the filing of said petition; that certain specified petitioners did not sign the petition in their own proper persons or handwriting. General and special replications were filed by appellants to said traverse, alleging, among other things, that certain of appellees were not *bona fide* land owners but merely owned a pretended interest in the lands under fraudulent deeds. At the conclusion of the hearing of the evidence offered by petitioners in the trial of the cause below, on motion of appellees the court withdrew all said evidence and found the issues for appellees and dismissed the said petition at appellants' cost. From this order this appeal was prayed.

Appellees insist that the petition to dissolve this district is a joint petition and an appeal therefrom must be in the names of all the petitioners, jointly; that it appears here that two petitioners appealed to the circuit court and that therefore this court cannot consider this appeal. Under the provisions of section 97 of the Practice act of 1907, (Hurd's Stat. 1909, p. 1708,) and paragraph 82*f* of chapter 37, being section 3 of an act as to the concurrent juris-

diction of circuit, superior and county courts in the organi-
zation of drainage districts, (Hurd's Stat. 1909, p. 683,)
it must be held that each petitioner herein, alone or with
others, has the right to pray an appeal.

The principal contention in the briefs in this case is as
to whether any of the lands in this district are "assessed"
lands, as that term is used in said act of 1889. Appellees
insist that lands are not "assessed," as that term is there
used, until the costs and benefits have been apportioned
under section 26 of the Farm Drainage act. (Hurd's Stat.
1909, p. 892.) We cannot so hold. It is clear from sec-
tions 21, 22 and 59 of the Farm Drainage act, in connec-
tion with the remainder of said act, that the legislature
intended the classification of the lands to be treated as
the special assessment of the lands. This court has held
that the classification of lands in a farm drainage district
is the vital thing to the land owner, as the classification,
when established, forms and remains the basis upon which
all drainage taxes must be levied in the district; (*People*
v. *Hulin,* 237 Ill. 122; *People* v. *Chapman,* 127 id. 387;)
that it is the classification, and not the spreading of an
assessment, that affects the rights of land owners. (*Peo-
ple* v. *Schwank,* 237 Ill. 40.) When lands have been classi-
fied under the Farm Drainage act the lands to be charged
with the payment of benefits are "assessed" lands. If any
of the lands so classified are placed in the zero class such
lands are not "assessed" lands. The distinction is between
the land which helps to bear the burden of the cost and
that which does not, and this distinction is ascertained as
soon as the classification is completed. All land classified
above zero as to which no appeal has been taken is neces-
sarily "assessed" land. All of the land in this district ap-
pears to have been classified above zero. We think the
trial court ruled incorrectly in holding that the land organ-
ized into farm drainage districts could not be held as "as-
sessed" land, under said act of 1889, until the commissioners

of the district, by resolution, had ordered an amount of money to be raised by special assessment upon the lands of the district, as provided in said section 26 of said Farm Drainage act.

It is agreed by counsel on both sides that the motion to dismiss was allowed by the court on the ground that none of the lands in the district were "assessed" lands, as that term is used in the said statute of 1889. In view of this fact the judgment must be reversed and the cause remanded. There are, however, other questions raised on the record by cross-errors which must necessarily be passed on when the case is tried again.

It is contended by appellees that the petition does not set out the jurisdictional facts as to the ownership of the lands. Appellees are not in a position to raise this question. They filed objections as to the sufficiency of the petition. These objections were overruled, whereupon they filed an answer to the petition, thereby, in effect, waiving all questions as to jurisdiction. Furthermore, the answer did not raise the question as to the ownership of the land by the petitioners. Fairly construed, it raised only the question whether the petition to dismiss was signed by not less than four-fifths of the adult land owners of the district, owning at least three-fourths in area. Under the reasoning of the court in *Hollenbeck* v. *Detrick,* 162 Ill. 388, *Town of Somonauk* v. *People,* 178 id. 631, and *People* v. *Kankakee and Seneca Railroad Co.* 248 id. 114, the classification roll and other files of the organization of the district introduced on this hearing were sufficient *prima facie* to show title in the petitioners. On that issue, unless evidence was offered contradicting this showing of title, the only duty of the court would be to ascertain whether the signers were four-fifths of the adult land owners of the district, owning three-fourths of the assessed land. In ascertaining whether four-fifths of the land owners of the district signed the petition for dissolution it is necessary

to decide whether the grantees in two certain deeds should be counted.

It appears that T. W. Edds, who owned quite a large amount of land in the district and was opposed to its dissolution, executed a quit-claim deed some three weeks before the filing of the petition to dissolve, conveying, for a consideration of one dollar, to his wife, three children and daughter-in-law a five-acre tract of land, and that he conveyed by another quit-claim deed, about a week before the petition was filed, for a consideration of $25, a strip of land four rods wide and containing one acre, to five other grantees, who appeared from the evidence to be related in some manner to him or his wife. It is argued by counsel for appellants that these deeds were not made in good faith, and that therefore the grantees therein should not be counted in computing the total number of adult land owners. It is shown by the evidence that both of these tracts were swampy, with a few trees, and that neither of the tracts has been set off by a fence; that at the time of the hearing no change in the character of usage had been made as to either of these small pieces described in the deeds. Appellees did not attempt to make any proof as to the good faith of these transfers. While drainage districts are created and dissolved by statutory authority, statutes must be given a reasonable construction. The provision of the statute as to the number of signatures of adult land owners necessarily has reference to actual, *bona fide* owners. We think it is clear from this record that these two deeds were made to increase the number of adult land owners who would not sign the petition to dissolve the district, and therefore we are compelled to hold that none of these ten grantees were actual, *bona fide* owners of land in the district, and that all of the ten should be disregarded in computing the total number of land owners.

Even leaving said ten names out of consideration, we find it somewhat difficult from the record to ascertain the

number of adult land owners in the district. Some of the original owners who signed the petition for the district have died leaving widows and heirs-at-law who are entitled to various shares not clearly shown, and several transfers of property by deed have been made since the formation of the district. Appellants claim that there are seventy-six adult land owners, while appellees insist the record shows seventy-nine, not counting, in either case, the ten grantees above referred to and the highway commissioners of the three townships. The appellants claim that sixty-six adult land owners signed the petition whose signatures were duly proved from the evidence in the record, leaving out the highway commissioners. Appellees admit that if certain signatures by agents and attorneys are included, the signatures as to fifty-nine names were properly proven on the trial below.

The formation or dissolution of a drainage district does not involve a freehold, as that term is used in the statutes and decisions. *Drainage Comrs.* v. *Harms,* 238 Ill. 414, *Funston* v. *Hoffman,* 232 id. 360, and other like cases cited by appellees, are not in point. A petition to dissolve a drainage district may be signed by an attorney or agent. *Merritt* v. *City of Kewanee,* 175 Ill. 537; *McVey* v. *City of Danville,* 188 id. 428; *Theurer* v. *People,* 211 id. 296; *Tibbetts* v. *West and South Towns Street Railway Co.* 153 id. 147.

We will now proceed to consider the signatures concerning which there is a dispute. The appellees contend that Felicite Oglesby's signature was not valid because the power of attorney to John G. Oglesby, under which it was signed, is torn and not all preserved in the record. The evidence shows that this was torn in opening the envelope in which it was returned. Disregarding the torn portion, there is still sufficient to make a valid power of attorney, therefore it must be held that Felicite Oglesby's name should be counted. It also appears from the evidence that

the signatures of R. J. Oglesby, W. P. Wakeman and C. A. Wakeman were properly proven. The record shows that Margaret Ellis owned a dower interest in certain land included in the district and that she signed the petition. We think she was properly counted as one of the adult land owners and signers. One I. H. Snyder signed the petition for dissolution. The record shows that thereafter, and before this hearing, he had sold his land but had not conveyed it. On this record we are disposed to hold that his name should be counted as owner and signer.

Parts of the highways in three towns were included in the district. The highway commissioners of these three towns should, in their corporate capacity, be considered land owners and competent signers to a petition to dissolve. (*People* v. *Magruder,* 237 Ill. 340.) Each board of commissioners should be considered as one owner, the signatures of two or more on any board counting as the signature for that board as one owner.

It is agreed by both parties that ten *bona fide* adult land owners did not sign the petition to dissolve. There is a dispute in the record as to whether Amy French, Fred Hahn, David Matthews and Louis Koehler (who did not sign the petition to dissolve) should be counted as owners. From this record we are not able to decide as to either of these four names, and therefore none of them are counted. Even including them as owners, however, there are sufficient signers. The fifty-nine undisputed names added to the six names that we have counted, and the three boards of highway commissioners, give sixty-eight signatures of owners. There are ten persons, as we have seen, that both sides have agreed are adult land owners and who did not sign. Adding fifty-nine undisputed owners who signed, ten who did not, six others whom we have counted as signers, W. W. Latham and J. D. Fusch, whose signatures were not sufficiently proven, and the three boards of highway commissioners, we have eighty adult owners. Four-fifths of

eighty is sixty-four. As sixty-eight owners signed, on the proof thus made in the record not less than fourth-fifths of the adult land owners signed the petition to dissolve. This will also be the case if we include ,as owners Amy French, Fred Hahn, David Matthews and Louis Koehler.

At the date of the hearing of the petition for dissolution there was outstanding, for certain costs, engineer's and publication fees incurred in the formation and organization of the district, a sum aggregating $1390.66. There was no other indebtedness against the district. The evidence shows that the above amount was duly paid to the clerk of the district, and through him to the creditors, before the final order in this case was entered by the trial court. This payment, in our judgment, complied with the provisions of the said act of 1889 as to the payment of such indebtedness and costs before the dissolution of the district.

The judgment will be reversed and the cause remanded to the county court of Logan county for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*