THE PEOPLE *ex rel.* W. W. Gifford, County Collector, Appellee, *vs.* THE CHICAGO AND INTERURBAN TRACTION COMPANY, Appellant.

*Opinion filed April 22, 1915.*

1. DRAINAGE—*property must be benefited by a drainage improvement to be subject to an assessment.* Property situated in a drainage district may be assessed for a drainage improvement provided it is benefited by the improvement, but if it is not benefited it cannot be assessed.

2. SAME—*the statute providing a method of classifying railroads and public roads must be followed.* Section 40 of the Farm Drainage act provides a method for classifying railroads and public roads after the commissioners have determined the amount of benefits to the entire district, including the benefits to such railroads or public roads, and if the statute is not followed a railroad has the same rights and remedies as an individual land owner.

3. SAME—*drainage tax cannot be levied on unclassified tract.* If no classification is made of a particular tract of land in the manner pointed out by the statute no drainage tax can subsequently be levied on such unclassified tract, as there is no basis for determining what its just proportion of the tax will be.

4. SAME—*an attempted classification of railroad property at a certain amount in dollars and cents is no classification.* An attempted classification of railroad property in a farm drainage district at a certain amount in dollars and cents instead of by fractional figures expressing the proportion which the benefits to the railroad property bear to the sum of the benefits to the entire district is the same as no classification of such property.

5. SAME—*action of commissioners must be shown by the drainage record.* In classifying lands in the district and levying taxes thereon drainage commissioners exercise a special authority conferred by statute, and their action must be shown by the drainage record, as the courts cannot presume that the commissioners have acted where the drainage record is silent on the matter.

6. SAME—*drainage record must show that commissioners determined the total amount of benefits.* Where the drainage record fails to show that at the time the lands were classified the commissioners determined the total amount of benefits to all the lands in the district, such omission cannot be supplied by a resolution levying a certain amount of tax on all the lands of the district some months after the classification roll was adopted and confirmed, nor can it be supplied by evidence as to what the commissioners had in mind or intended to do.

7. SAME—*section 191 of Revenue act does not permit the supplying of a classification.* Section 191 of the Revenue act does not authorize the court to amend the classification roll or make a classification if no classification has been made, as no amendment can be allowed under such section which would amount to levying a tax upon property in the first instance.

8. SAME—*when land owner is not estopped to object by failing to attend hearing on the classification.* The fact that a land owner having notice of the time and place for the hearing of objections to the classification roll fails to attend the hearing does not preclude him from objecting, upon application for judgment and order of sale for the delinquent drainage tax, that no classification of his lands was made in the manner pointed out by statute.

APPEAL from the County Court of Will county; the Hon. GEORGE J. COWING, Judge, presiding.

O'DONNELL, DONOVAN & BRAY, and BUSBY, WEBER, MILLER & ROBINSON, (JAMES A. BRAY, and ARTHUR A. ANDERSON, of counsel,) for appellant.

ROBERT W. MARTIN, and ALBERT H. KRUSEMARK, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This appeal is taken by the Chicago and Interurban Traction Company from a judgment and order of sale of the property of appellant, rendered by the county court of Will county, for delinquent drainage taxes of drainage district No. 5 in the town of Monee, in that county. The drainage district is organized under the Farm Drainage act, and includes within its boundaries a portion of appellant's railroad between Chicago and Kankakee. Appellant appeared and filed numerous objections to the application for judgment, among which were objections to the effect that the appellant's property was assessed more than it was benefited, that no valid classification had been made of appellant's property, that the assessment is void because the property assessed is not described, and that property of ap-

pellant has been assessed which is not included within the boundaries of the district. On the hearing both parties introduced evidence, at the conclusion of which the court reduced the assessment from $1200 to $500, and after allowing the commissioners to amend the classification roll by inserting a description of appellant's lands in the district under the title "Description of lands," and under the title "Classification" the figures "12/75" before the figures "$1200" opposite appellant's name on the classification roll, overruled all objections except the first, which was sustained in part, and rendered judgment against the lands of appellant for $300, being the corrected amount of the first installment of the assessment. The appellant deposited the amount of the judgment with the county treasurer, and has prosecuted this appeal to review the judgment of the lower court, assigning as error the overruling of its objections, the permitting of amendments to the classification roll and the entering of judgment and order of sale against its lands.

It appears that on June 19, 1913, the drainage commissioners passed a resolution for repairing, cleaning out and extending the ditch, and on June 21 made a classification of the lands in the district on the graduated scale, according to benefits. One tract was classified at 100 points, and all others, except highways and railroads, were classified at other percentages, according to the supposed benefits. The classification roll contained no description of the lands of the appellant in the district, but opposite the words, "The Chicago and Interurban Traction Company," and under the word "Classification," the figures "$1200" are written. Appellant was given due notice of the time and place of the meeting to hear objections to the classification but did not appear at such meeting. On the day set for the hearing various changes and corrections were made in the classification of the lands in the district, and as thus modified and corrected the classification roll was confirmed, no change being made with respect to the classification of the lands

of appellant. The order confirming the classification roll was entered July 18, 1913. On October 9, following, the commissioners, by resolution, ordered that $7500 be raised by special assessment on the lands of the district, to be apportioned among the various tracts according to the rate of classification previously made. The assessment was divided into two installments,—the first for three-fifths and the second for two-fifths of the total amount. The assessment against appellant's property was $1200. Opposite appellant's corporate name the figures $720 and $480 appear, representing the two installments of the assessment. The appellant refused to pay the first installment, and the treasurer of the drainage district returned to the county collector of Will county the following as delinquent: "An assessment of seven hundred twenty dollars ($720) assessed against the Chicago and Interurban Traction Company on the lands of said Chicago and Interurban Traction Company in said drainage district No. 5, Monee township, Will county, Illinois, described as follows: Right of way of Chicago and Interurban Traction Company through the east half of southeast quarter of section twenty-two (22), also through section twenty-three (23), also through the west half of section thirteen (13), also beginning at north and south center line of section thirteen (13), thence northeasterly a distance of 1500 feet along the center line of said track, all of said aforementioned real estate being situated in the township of Monee, Will county, Illinois." On the hearing appellee was permitted to amend the classification roll as stated above by inserting a description of that portion of appellant's property within the district, and by inserting under the word "Classification" and before the figures "$1200" the fractional figures "12/75," and was also given leave to amend the delinquent list by striking therefrom that portion of the right of way which is described as "1500 feet along the center line of said track," which is admitted to be outside the boundaries of the dis-

267 — 33

trict. While leave to amend the delinquent list by striking out that portion of the appellant's right of way outside the district was granted, the amendment was not made, and the judgment and order of sale are apparently against all of appellant's right of way described in the delinquent return.

As to the first objection, it appears from the evidence that the total area of the drainage district is about twelve hundred acres. The total area of the right of way of the appellant in the district is twelve acres. The tract of land classified at 100 is assessed $17.38 an acre. Appellant's property is assessed about $100 an acre. As the appellant owned about twelve acres of right of way in the district, it was assessed nearly one-sixth of the entire assessment. It further appears from the evidence that while the right of way is low in places and is covered with water at times and is drained to some extent by reason of the improvement in question, the road-bed is constructed of crushed stone and gravel, graded up from two to three feet above the surface of the ground, so that the track is from one to two feet above high-water mark. There is evidence in the record that the improvement is of no benefit whatever to appellant, and there is testimony of the engineer of the district and the commissioners that the property of appellant is benefited, but these witnesses to sustain the assessment do not give any very good reasons to support their testimony. Property situated in a drainage district may be assessed for a drainage improvement, but it must be property that is benefited by such improvement. This is expressly provided by section 31 of article 4 of the constitution. (*Vandalia Drainage District* v. *Vandalia Railroad Co.* 247 Ill. 114, and cases cited.) The Drainage act provides the manner in which railroads and public roads in a drainage district may be assessed if benefited, and this leads to a consideration of the second objection,—that there was no proper classification of the appellant's lands in the classification roll or delinquent list.

The method to be pursued in classifying lands other than railroads and highways is prescribed by section 21 of the Farm Drainage act. (Hurd's Stat. 1913, p. 954.) Section 40 of the same act authorizes the drainage commissioners to assess to any public road or railroad in the district such sum or sums as will be just and equitable for such public road or railroad to pay in proportion to the benefits received. This section of the statute further provides that the commissioners shall determine the amount of benefits to the entire district, including the benefits to such railroad or public road, and then by fractional figures express the ratio between the sum of the benefits for the whole district and the sum found to be the benefit to the railroad or public road. Such proportional classification is subject to appeal and review, the same as is provided for individual land owners. This statute was not observed in classifying the property of appellant. There is nothing in the drainage record offered in evidence showing that the commissioners ever determined the amount of benefits to the entire district, including the benefits to appellant and to public roads, as required. In allowing the amendment the county court assumed that the amount of benefits to the entire district was the amount of the assessment subsequently made, and further assumed that this being in the mind of the drainage commissioners had the same effect as if they had properly made an estimate of the benefits and made such estimate a part of their drainage record. Even if it were true that the amount of benefits exactly equaled the assessment subsequently made, which it must be conceded would be an unusual case, then, instead of expressing the amount of benefits in a gross amount, as was done in this case, it should have been expressed by fractional figures representing the proportion of benefits that would accrue to appellant's property, thus: Assuming the total benefits to be $7500, and $1200 as representing, in the judgment of the commissioners, the amount of benefits appellant's

property would receive, its rate of classification should have been expressed by the fractional figures 12/75 instead of by the figures $1200. As was pointed out in *Commissioners of Highways* v. *Drainage Comrs.* 127 Ill. 581, the purpose of section 40 of the Drainage act was to provide the method of classification for railroads and highways. If, then, the statute is not followed, a railroad has the same rights and remedies as an individual land owner where there is an improper classification or no classification at all.

The classification of land determines the proportion of the total cost of the contemplated improvement that each tract of land shall bear and is of vital importance to the land owners, as the classification, when once established, forms and remains the basis upon which all drainage taxes, both present and future, are levied in the district, unless a new classification is made in the manner provided in section 21 of the Farm Drainage act. (*Cosby* v. *Barnes,* 251 Ill. 460; *People* v. *Hulin,* 237 id. 122.) If no classification is made of any particular tract in the manner pointed out by the statute no tax can subsequently be levied upon such unclassified tract of land, as there is no basis upon which to determine what its just portion of the tax will be. A classification roll on which a tract of land is classified at a designated amount in dollars and cents instead of at its rate per cent of benefits on the graduated scale is no classification whatever of such tract of land, for, while the alleged classification at $1200 might represent the just proportion which the tract should bear of a tax levy of $7500, (the amount of the tax levy the commissioners might have in mind at the time the classification was made,) it would not represent the just proportion of the tax the tract should bear on a levy of $2500, or any other amount, should an additional levy be deemed necessary for the purpose of completing the improvement. For this reason the statute has required that all the lands in the district shall be classified on the graduated scale according to benefits, and that

the benefit to public roads and railroads in the district shall
be expressed in fractional figures expressing the ratio of
benefit to be received by them in proportion to the bene-
fit to be received by all of the other lands in the district,
and in that way the public roads and railroads are made to
bear only their just proportion of the tax levy that may
subsequently be made, no matter what the amount of such
levy may be.   Where the drainage record fails to show
that at the time the lands in the district were classified the
commissioners estimated the total amount of benefits to
all of the lands in the district, such classification cannot be
supplied or presumed from a resolution levying a tax of
$7500 on the lands in the district more than two months
after the classification roll was adopted and confirmed; nor
can such classification be supplied by taking evidence as to
what the commissioners may have had in mind or intended
to do, as was the case here.   Drainage commissioners, in
classifying the lands of the district and levying taxes there-
on, exercise a special authority conferred by statute and
their action in the premises must be shown by the drain-
age records.   Where their records are silent the law does
not, and the courts cannot, presume that they have acted in
the matter.   (*People* v. *Warren,* 231 Ill. 518; *People* v.
*Carr,* 265 id. 220.)   The estimate of the total benefits to
all of the lands in the district must be made at the time the
classification of the lands is made, and the failure to make
such estimate at that time cannot be supplied by an assess-
ment subsequently levied.   The amount of the assessment
levied cannot be accepted as the correct estimate of the total
amount of benefits to be received, as it not infrequently
happens that the cost of the contemplated improvement will
not equal the amount of benefits derived from such im-
provement.   The writing in of the figures "$1200" on the
classification roll after appellant's name instead of the de-
scription of its lands, and the fractional figures representing
the proportionate amount of the benefits the lands would

receive, was no classification whatever of appellant's lands. Such classification was a necessary and material part of the proceedings to levy the tax.

The appellee insists that the designation by the drainage commissioners of $1200 as the proportion of the cost of the improvement which the appellant's property should bear was but an error on the part of the tax-levying authorities, which could be corrected by the court under the provisions of section 191 of the Revenue act. With this contention we do not agree. The statute requires that the classification of the lands in the district shall be made before the tax is levied and the special assessment or tax list made out. Section 191 confers no authority upon the court to amend the classification roll or to make a classification of lands where no classification of the same has been made by the commissioners. Said section provides that in proceedings for the collection of taxes and special assessments "all amendments may be made which, by law, could be made in any personal action pending in such court, and no assessment of property or charge for any of said taxes shall be considered illegal on account of any irregularity in the tax lists or assessment rolls, or on account of the assessment rolls or tax lists not having been made, completed or returned within the time required by law, * * * and no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." And it is further provided in said section that any omission or defective act of any officer or officers connected with the assessment or levying of such taxes may be, in the discretion of the court, corrected, supplied and made to conform to law by the court, or by the person, in the presence of the court, by whose neglect or default the same was occasioned. While the provisions of this statute are to be liberally construed, (*People* v.

*Smith,* 149 Ill. 549,) and as authorizing any amendments which could by law be made in any personal action pending in court, *(Walsh* v. *People, 79* Ill. 521,) its provisions have never been held to authorize the allowance of an amendment which would, in effect, be the levying of a tax upon property on which no tax had ever been legally levied, *(People* v. *Smith, supra; People* v. *Carr,* 231 Ill. 502;) nor.can they be given such a construction. The manner of .making .the tax levy is pointed out in section 26 of the Farm Drainage act. It is the adoption by the drainage commissioners of the resolution provided for in section 26 which constitutes the levy of the assessment to be spread against the lands of the district. *(People* v. *Carr,* 265 Ill. 220.) The classification of the lands is provided for by sections 21 and 40. Section 26 must be construed together with sections 21 and 40 as to the amount of tax which each tract of land must bear, and the amount of tax each land owner must pay is determined by the proceedings taken under all three sections. As said in *People* v. *Schwank,* 237 Ill. 40: "It is the classification of the lands which determines the rights and liabilities of the land owners." A failure on the part of the commissioners to classify part of the lands could not be corrected or supplied by an amendment to the classification roll made on the hearing of objection to taxes, any more than the tax levy provided for by section 26 of the act could be supplied. It was for the commissioners, and not the court, to make the proper classification of the lands in the district as well as levy the tax. For this reason we think the court erred in permitting the classification roll to be amended on the hearing by inserting before the figures "$1200" on the classification roll the fractional figures "12/75" as representing the rate of classification of the lands of appellant.

Appellee further insists that since the error in the classification of the lands of appellant was one which might have been corrected at the meeting to hear objections to

the classification roll and appellant had due notice of such hearing, it is now precluded from raising any question as to the correctness of the classification roll as adopted at such meeting. While the rule undoubtedly is that where lands have been classified by the commissioners and due notice given the land owner of the time and place of the hearing a land owner failing to appear at such meeting is precluded from thereafter raising any question as to the correctness and propriety of the classification roll as finally adopted by the commissioners, (*People* v. *Chapman,* 127 Ill. 387; *People* v. *Sullivan,* 238 id. 386;) this rule has no application to a case such as the one at bar, where the objection is not to the rate of classification but that no classification whatever has been made of the lands of the property owner in the manner required by the statute, and, consequently, there is no valid tax or assessment. Where no classification is, in fact, made, the land owner does not waive his right to urge such failure to classify his lands, on application for judgment, by his failure to appear and urge such objection at the meeting to hear objections to the classification of the lands as made by the commissioners. Until his lands have been duly classified at some rating on the graduated scale, as required by the statute, there is no classification or rating to which the property owner can appear and urge objections. A property owner cannot well be said to have waived his right to object to the rate of classification of his lands until there has, in fact, been a rating and classification of his lands made as to which he might appear and urge objections.

The second objection should have been sustained, and as the tax must be abated for this reason it will not be necessary to consider or pass upon the other objections raised.

For the reasons given, the judgment of the county court of Will county will be reversed.

*Judgment reversed.*