THE PEOPLE *ex rel.* Clifford Quisenberry, County Collector, Appellant, *vs.* SARAH J. BENTLEY *et al.* Appellees.

*Opinion filed June 24, 1915.*

1. DRAINAGE—*signing petition does not preclude signer from objecting that assessment exceeds benefits.* The provision of section 15 of the Farm Drainage act that the signing of a drainage petition shall be taken as conclusive against the persons so signing that they have accepted the provisions of the act as to their assessments of benefits and damages thereunder, does not preclude the signers from insisting upon their constitutional right that their property shall not be assessed more that it is benefited nor be taken without just compensation.

2. SAME—*there is no right to a trial by jury on question of benefits in annexing land to special district.* In a proceeding to annex lands to a special farm drainage district there is no constitutional or statutory right to a trial by jury upon the question of benefits.

3. SAME—*commissioners' certificate of levy is not essential to People's prima facie case.* The commissioners' certificate of levy of a farm drainage assessment is not essential to the *prima facie* case of the People on application for judgment and order of sale made by the introduction in evidence of the delinquent list, and the People are entitled to judgment unless the objectors prove a defense to all or some part of the list.

4. SAME—*when a notice, by publication, of a meeting to hear objections to classification is sufficient.* In a proceeding to annex lands to a special farm drainage district, a notice by publication in conformity with section 60 of the Farm Drainage act is sufficient notice of the meeting for the hearing of objections to the classification of the land.

5. SAME—*when provisions relating to union districts do not apply.* The provisions of section 48 of the Farm Drainage act relating to the organization of union districts which may be organ-

ized from territory lying in two towns have no application to a sub-district in a special drainage district composed of land lying in three or more towns, even though the sub-district contains land in two towns, only.

6. SAME—*what does not show that the commissioners failed to find amount levied was necessary to be raised.* The *prima facie* case made by the collector's report on application for judgment of sale for a delinquent special farm drainage assessment is not rebutted by proof that the record of a certain meeting held two weeks before confirmation of the assessment failed to show any finding by the commissioners that the amount levied was necessary to be raised by special assessment. (*People* v. *Welch,* 252 Ill. 167, distinguished.)

APPEAL from the County Court of Logan county; the Hon. CHARLES J. GEHLBACH, Judge, presiding.

C. EVERETT SMITH, State's Attorney, (MILLS BROS., of counsel,) for appellant.

T. A. GASAWAY, and BEACH & TRAPP, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The county collector of Logan county made application to the county court for judgment and order of sale against the property of the appellees for a delinquent drainage assessment. The appellees filed objections, which were all overruled except the seventh, which was that the tax was excessive and exceeded the benefits to each tract of the appellees' land and that there was no benefit. The People have appealed and the appellees have assigned cross-errors.

The Illini Special Drainage District lies, in part, in each of the counties of Macon and Logan. Sub-district No. 7 lies wholly in Logan county and contained about 820 acres. A petition was filed with the commissioners praying for the annexation of about 1150 acres of land to the district. Appellee Sarah J. Bentley was a life tenant of 80 acres of the land thus annexed and the other three appellees were the owners of the remainder. On September 19, 1912, the

lands described in the petition were so annexed. Mrs. Bentley and one of the other appellees signed the petition. The drainage commissioners on July 9, 1913, determined that $226.54 was the amount which all of the lands so added would have been assessed for the general outlet of the district if they had been originally included in the district at its organization, and that $11,977.85 should be levied as a special assessment for drainage purposes for the lands in sub-district No. 7, including the lands so added. This sum was payable in two equal installments, the first due September 1, 1913, the other December 1, 1913. The share of the appellees was $214.06 on each of the 40-acre tracts. The court heard evidence on the question of the amount of benefits and reduced the amount assessed against each of the 40-acre tracts owned by the appellees, rendering judgment against one for $28.06 and against the other for $194.06.

It is insisted by the appellant that the finding of the court in regard to the amount of the benefits is not sustained by the evidence and that judgment should have been rendered for the full amount of the assessments. The burden of proof was upon the objectors to show that the assessment of benefits was excessive, and they introduced testimony which, if uncontradicted, was sufficient for this purpose. Appellant introduced testimony to the contrary strongly tending to sustain an assessment even higher, and it is insisted that the record shows that the witnesses for the appellant had better means of knowledge than those for the appellees, and that their testimony for that reason is entitled to more weight. The 80 acres in question has been tiled, and the extent and character of its drainage were testified to but not very satisfactorily shown. There were differences of opinion among the witnesses without much basis of facts proved to enable us to judge the value of the opinions. We have read the evidence in the record, and we cannot say that the finding of the court is so contrary to the evidence that it should be reversed.

It is also insisted that the appellees Sarah J. Bentley and William H. Bentley having signed the petition for the annexation of their lands to the district are estopped from objecting to the assessment on the ground that it is in excess of the benefits to the particular tract, and that such signing of the petition binds them to pay the full amount of any assessment levied upon the lands annexed, in proportion to the figure of classification, if the assessment does not exceed, in the aggregate, the benefits to all the lands annexed, regardless of whether the assessment on the particular 80 acres exceeds the benefits to that particular tract. This claim is based upon the last sentence of section 15 of the Farm Drainage act, which provides that "the signing of any petition referred to in this act shall be taken as conclusive against the person so signing that they have accepted the provisions of this act as to their assessments of benefits and damages thereunder." This does not mean, however, that the signer of a petition thereby agrees to accept any assessment of damages or benefits that may be made, or waives his constitutional right that his property shall not be assessed more than it is benefited or taken without just compensation. The provisions of the act as to the assessment of benefits and damages are subject to constitutional limitations, and the signing of a petition does not deprive the signer of the protection of such limitations.

By their assignment of cross-errors the appellees question the amount of the judgment rendered against their land as being excessive, but we have disposed of this question by what has already been said on the subject. The appellees contend that they had a right to have the question of the amount of benefits tried by a jury, but there is no constitutional or statutory right to a trial by jury in cases of this kind.

It is also insisted that the appellant failed to make a *prima facie* case, because the commissioners' certificate of the levy of the assessment was not offered in evidence.

The introduction of the delinquent list made a case which entitled the People to judgment for the amount shown by it unless the appellees proved a defense to all or some part of it. *People* v. *Wabash Railroad Co.* 256 Ill. 626; *People* v. *Whitesell,* 262 id. 387.

It is objected that the classification of appellees' land is void because there was no notice of the meeting to hear objections other than by publication. The Illini Special Drainage District being in three or more towns, in different counties, was organized in the county court of Macon county in accordance with the provisions of section 49 and the following sections of the Farm Drainage act. Section 42 provides for the annexation of lands to drainage districts organized under the Farm Drainage act, and, although this section does not prescribe the mode of procedure or notice to be given, it was held in *Mason and Tazewell Drainage District* v. *Griffin,* 134 Ill. 330, that the provisions applicable to notice in case of the original organization of special drainage districts which are found in section 50 of the Farm Drainage act should apply to proceedings to enlarge the boundaries of such districts. Section 42 expressly provides that the classification and assessment of the added lands shall be made in like manner and upon the same basis as if the new area had been included in the district at its organization. It is not claimed that notice of the meeting to hear objections to the classification was not in accordance with the requirements of the act in regard to special drainage districts as contained in section 60, and such notice was sufficient.

It is argued that sub-district No. 7, although a sub-district of Illini Special Drainage District, which is a special drainage district, is itself a union drainage district because situated in two townships. The organization of union districts is provided for by section 48 of the Farm Drainage act. They may be organized from territory lying in two towns upon petition filed with the town clerk, who

selects from the commissioners of highways of the two towns three commissioners to constitute the drainage commissioners for the union districts. Sub-district No. 7 was not organized in this way but was organized under section 43 by the commissioners of the special drainage district, who were also the commissioners of the sub-district, and the provisions of the act in regard to union districts have no application to the sub-district.

The appellees contend that the assessment is void because based upon a resolution of the commissioners which does not state that the amount levied was necessary to be raised by special assessment, citing *People* v. *Welch,* 252 Ill. 167. The assessment in that case was levied under section 26 while the assessment here is based upon section 62, which sets out the form of certificate required to be filed with the clerk of the county court. Conceding that section 62 requires the same finding as section 26 in regard to the amount necessary to be raised by special assessment, the record does not show that such finding was not made. There were introduced in evidence the certificates of the commissioners dated July 9, 1913, filed with the clerk, to which no objection was made that they did not conform to the statute. The drainage commissioners' record of a meeting held on July 9, 1913, was also introduced, which showed that on that day the commissioners levied and assessed upon the lands in question the amounts specified in their certificate. The record of this meeting does not show any finding at that time that the amounts named were necessary to be raised by special assessment. The certificates refer to the classification of lands filed in the office of the clerk of the county court on June 2, 1913, and confirmed on June 24, 1913. Section 62 of the Farm Drainage act authorizes the commissioners, as soon as the classification has been confirmed, to order such an amount of money to be raised by special assessment as may be necessary. The collector, by the introduction of his report, made a *prima*

*facie* case that everything necessary to entitle him to judgment had been done. The burden was on the objectors to show the contrary, and they undertook to show that there was no finding by the commissioners that the amount certified by them was necessary. This they attempted to do by showing that the record of the meeting of July 9, 1913, showed no such finding. This, however, was as far as the objectors went on this question, and it was not far enough. More than two weeks elapsed between June 24, the date of the confirmation of the assessment, and the meeting of July 9. No evidence was introduced as to whether a meeting of the commissioners had been held during this time or as to whether the commissioners had made a finding at such a meeting of the amount necessary to be raised. Since a finding of the amount necessary to be raised might have been made at a previous meeting and the levy of the amount so found might then have been made at the meeting of July 9, the failure of the record of the latter meeting to show that the commissioners found that the amount levied was necessary to be raised does not rebut the presumption arising from the collector's report that the commissioners had made such finding. *People* v. *Illinois Central Railroad Co.* 256 Ill. 416; *People* v. *Hulin,* 237 id. 122.

The judgment of the county court is affirmed.

*Judgment affirmed.*

. Subsequently, on petition for rehearing, the following additional opinion was filed:

PER CURIAM: The foregoing opinion was adopted at the February, 1915, term, and a rehearing was allowed at the succeeding April term. Upon a re-examination of the case we find no grounds for changing our views and conclusions as therein expressed.