(No. 13012.—Reversed and remanded.)

THE COMMISSIONERS OF LAKE FORK SPECIAL DRAINAGE DISTRICT, Appellants, *vs.* THE COMMISSIONERS OF HIGHWAYS OF LAKE FORK TOWNSHIP, Appellees.

*Opinion filed April 21, 1920.*

1. DRAINAGE—*meeting for classification of lands in a special drainage district need not be held within boundaries of the district.* There is no provision in the Farm Drainage act requiring the meeting for the classification of lands in a special drainage district to be held within the boundaries of the district, and the preliminary steps for calling such meeting need not be taken within the district.

2. SAME—*meeting for levying assessment need not be held within boundaries of special drainage district.* The meeting for levying of assessments in a special drainage district need not be held within the boundaries of the district.

3. SAME—*classification of lands, and not spreading of assessment, affects rights of land owners.* The classification of the lands in a farm drainage district, and not the spreading of an assessment, affects the rights of land owners.

4. SAME—*no notice is required of time and place of meeting to levy assessments.* Under the Farm Drainage act no notice is required as to the time and place of the meeting of the drainage commissioners for the levying of assessments.

5. SAME—*land owners need not be personally notified of meeting to hear objections to classification.* Section 60 of the Farm Drainage act does not require any other notice to land owners of the meeting to hear objections to the classification of lands than the notice by publication as therein set forth.

6. SAME—*when classification need not show fractional figures of proportion of assessment of public highway.* The Farm Drainage act requires that the fractional figures shall be inserted in the classification showing the proportion of the assessment to be paid by any public highway or railroad, but an objection to the assessment of highways in a township that the classification does not comply with such statutory requirement is not fatal where the total assessment in the district is given with the total assessment against the highways in the township.

7. SAME—*levy of assessment in special drainage district is governed by section 62 of Farm Drainage act.* The method of levying an assessment in a special drainage district is not governed by section 26 of the Farm Drainage act but by section 62 of that act,

which does not require the commissioners to adopt a resolution in the form provided for in section 26.

8. SAME—*action at law is only remedy to collect unpaid assessment against highways.* The only remedy to collect an unpaid assessment against public highways in a farm drainage district is to obtain a judgment against the commissioners in an action at law, and, if not paid, to follow it up with *mandamus,* as no judgment and order of sale of the highways can be had on application of the county collector.

9. SAME—*highway commissioners are entitled to a hearing on question whether assessment exceeds benefits.* In an action at law to collect an unpaid drainage assessment against highways the defendant highway commissioners are entitled to a hearing on the question whether the assessment exceeds the benefits.

10. SAME—*proof that highways receive some benefit does not estop highway commissioners to prove assessment exceeds benefit.* In an action against highway commissioners to collect an unpaid drainage assessment, where no appeal was taken from the order confirming the classification, the highway commissioners are estopped to deny that the highways receive some benefit; but proof that they receive some benefit does not preclude the commissioners from proving that the assessment exceeds the benefit.

11. APPEALS AND ERRORS—*all issues are before Supreme Court when cause is certified from Appellate Court.* Where a cause is certified to the Supreme Court from the Appellate Court, the Supreme Court is not confined to the point upon which the cause is certified but all the issues involved in the case are before it for consideration.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

GEORGE SMITH, and COVEY & WOODS, for appellants.

BEACH & TRAPP, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellants brought two actions in debt against appellees for the collection of certain drainage assessments levied against the highways of Lake Fork township. The first action was brought to recover assessments for the years

1909 and 1910, and afterwards a second suit was brought to recover the assessment for 1911, the total assessments for the three years amounting to $655.88. By agreement the two cases were consolidated in the circuit court and tried as one. The jury being waived, the court found for appellees and rendered judgment against appellants for costs. An appeal was taken to the Appellate Court, where the judgment of the circuit court was affirmed. The Appellate Court granted a certificate of importance and the case is now here on appeal.

The two actions were treated as one in the Appellate Court and we shall so consider them here.

Lake Fork Special Drainage District, embracing lands in the towns of Lake Fork, Mt. Pulaski and Elkhart, in Logan county, was organized as a special drainage district in 1890 under the provisions of section 49, etc., of the Farm Drainage act. (Hurd's Stat. 1917, p. 1132.) No question is raised as to it being thus properly organized. The court appointed three persons as the drainage commissioners of the district, to cause estimates, surveys and plats to be made in accordance with the statute. The commissioners thus appointed performed such work and reported to the court recommending that the district be finally organized, and an order was entered so finding. The lands in its boundaries, including the public highways, were classified, the classification confirmed and assessments thereafter levied by the commissioners to construct the work. In March, 1905, a petition of land owners in the district was filed praying for the enlargement of the boundaries of the district and the enlarging and deepening of the main ditch of the district to provide a necessary outlet. A hearing was thereafter had on April 10 of the same year, the prayer of the petition granted and an order made that the district be enlarged so as to include the additional lands described. The declaration in this action alleged the organization of the district as a special drainage district; that in 1906, in pursuance

of a petition of land owners in the district, the district was enlarged and the deepening of the original channel ordered, it being determined that all the lands, highways and railroads in the district would be benefited by the improvement $120,000; that this amount was $50,000 more than the estimated cost of the work, and that the highways in the town of Lake Fork would be benefited $3000. Thereafter an assessment of $70,000 was ordered levied and collected and the lands classified for that purpose. After the work had proceeded for some time it was discovered that an additional $12,000 would be required to complete it, and an additional assessment was made for that sum. Subsequently the greater portion of the assessment was divided into ten installments and bonds issued to the amount of $54,000. The commissioners of highways of Lake Fork township failed to pay the assessments for the three years already mentioned, and these actions were brought to collect them. The defendants pleaded the general issue and *nul tiel* record.

On the trial of the case appellants introduced in evidence the record of the proceedings in the original organization of the district, the record of the enlargement of the district and its main ditch, and of the classification and assessments. Appellees introduced, over the objection of appellants, proof that the highways of Lake Fork township were not benefited by the enlargement of the district and of the main outlet ditch. Counsel for appellees also introduced the records of the drainage commissioners to show that none of the meetings of the commissioners for classification or levying assessments were held within the physical boundaries of the district, and the testimony of one of the commissioners to the effect that no meeting of the commissioners on these matters was ever held within the district; that they were held at the office of their attorneys in Mt. Pulaski, about four miles from the boundaries of the district, or at the office of the county clerk

in Lincoln, the county seat, some fifteen miles from the district. Counsel for the appellees argue that all of these meetings of the commissioners should have been held within the physical boundaries of the district; that an assessment levied at a meeting of the drainage commissioners outside of the district is void, citing numerous cases decided by this court holding that meetings of the commissioners as to certain farm drainage districts must be held within the boundaries of the districts, among others, *People* v. *Carr,* 231 Ill. 502; *People* v. *Anderson,* 239 id. 266; *People* v. *Hepler,* 240 id. 196; *People* v. *Camp,* 243 id. 154; *People* v. *Larsen,* 282 id. 501.

In deciding whether these decisions are controlling on this question it must be noted that under the Farm Drainage act several kinds of drainage districts are provided for: The first class, those that ordinarily lie wholly within one town; the second, union districts, lying in two towns in the same or different counties; and the third, special drainage districts lying in three or more towns in the same or different counties. There are also other kinds of districts provided for in said act to which it is not necessary to refer here. None of the decisions relied on by counsel for appellees on this question were decided with reference to special farm drainage districts such as the one here under consideration. There are no special provisions in the statute with reference to the place of holding district meetings of the first two classes, and this court has held in some of the decisions cited that the spirit of the Farm Drainage act required that such meetings be held within the boundaries of the district, but section 60, as to holding the meeting for classification of the lands in the third class of districts, provides: "Said commissioners shall fix the time, not less than fifteen days from the filing thereof, when they will meet to hear any and all objections that may be made to their classification, which meeting shall be at the court house of the county in which the district was organized, unless

the commissioners shall for the convenience of persons interested, designate some other place; and it shall thereupon be the duty of said clerk to issue notice or notices of the time and place of such meeting." (Hurd's Stat. 1917, p. 1137.) There is no other provision in the statute as to the place of meeting of the commissioners in this class of districts.

Counsel for appellees earnestly argue that the same reasons exist for holding the meetings of the commissioners in this class of districts within the boundaries of the district as in the other two classes. Obviously, the legislature did not so think. In the first two classes they provided that the town clerk should be the clerk of the drainage board, whereas in the special farm drainage districts they provided the county clerk should be the clerk, and then made the special provision that the most important meeting held by the district commissioners,—that is, the one for the classification of the lands,—should be held outside of the district, at the court house, or at such other place,—not stating whether within or without the district,—as might be decided upon as more convenient to the parties interested. Beyond question it was intended that the meeting for classification, under this provision of the statute, could be held outside of the district. This seems to be conceded by counsel for appellees, but they insist that in order to be legally held outside of the district the commissioners must first meet within the boundaries of the district to call such a meeting at the county seat or any other place outside which would be more convenient. This court has held in that class of farm drainage districts where the meetings of the commissioners for classification are required to be held within the boundaries of the district, it is not necessary that the preliminary steps taken by the drainage district to call a meeting for the classification should be taken within the boundaries of the district. (*People* v. *Adair*, 247 Ill. 398.) The reasoning of this court in *Caldwell* v. *Highway Comrs.* 249 Ill. 366, sup-

ports the same conclusion. Under the reasoning of these cases there can be no question that it was not necessary that the preliminary steps for the calling of the meeting be shown to have been taken within the boundaries of the drainage district.

It is further argued by counsel for the appellees that the meetings for the levying of the tax must be shown to have been held within the district in order to make the levy valid. The statute does not so require. "It is the classification of the land which determines the rights and liabilities of the land owners, and the spreading of an assessment is nothing but a mathematical computation, which determines no rights and affects no interests." (*People* v. *Schwank,* 237 Ill. 40.) The classification of the lands in a farm drainage district is the vital thing to the land owner, and it is the classification, and not the spreading of an assessment, that affects the rights of land owners. (*Cosby* v. *Barnes,* 251 Ill. 460; *People* v. *Larsen, supra.*) If the legislature did not think it was necessary that the meeting for classification of the lands,—the most important meeting,—should be held in the district, certainly it is unreasonable to suppose that the spirit of the act, as applied to special farm drainage districts, required other less important meetings to be held within the physical boundaries of the district. We think there is no merit in the argument of counsel for appellees that the record must show that the meeting for levying the taxes was held within the boundaries of the district.

Counsel for appellees further argue that the record fails to show that the land owners or the appellees were given notice as to the time and place of the meeting of the drainage commissioners for the levying of the special assessment. This court has held that under the Farm Drainage law no notice was required as to the time and place of such meeting. *People* v. *Hulin,* 237 Ill. 122, and cases there cited.

In this connection counsel argue that appellees were not notified of the meeting to hear objections to the classifica-

tion. The statute does not require that they be personally notified. Section 60 of the Farm Drainage act prescribes the form of the notice, addressed "To whom it may con-cern," and requires the publication of the notice in a news-paper in the county two successive weeks. It does not re-quire any other notice to be given to the parties interested. *People* v. *Bentley,* 268 Ill. 470.

The Appellate Court certifying this cause to this court only certified as the important law question a construction as to the necessity, under the statute, of meetings of the drain-age commissioners being held within the physical boundaries of the district, but it is the law, and is conceded by counsel for appellees, that when a cause is certified here from the Appellate Court this court is not confined to the point upon which the cause is certified but that all the issues involved in the case are before this court for consideration.

Counsel for appellees further argue that the classifica-tion, in so far as it affects the highways of Lake Fork township, was invalid because the classification only pro-vided as to these roads as follows: "Estimated benefits by the proposed improvements to the highways of Lake Fork township, in Logan county, Illinois, $3000;" that under sec-tion 40 of the Farm Drainage act it is provided that for any public highway, if any part of the same shall be bene-fited, the commissioners "may assess to such public road * * * such sum or sums as will be just and equitable for such public road * * * to pay in proportion to the benefits received; which shall be determined by estimating the amount of benefits to the entire district, including the benefits to such * * * public road; and also the bene-fits to * * * the public road, then the fractional figures expressing the ratio between the sum of the benefits for the whole district, and the sum found to be the benefit to the railroad or public road shall express the proportional part of the corporate taxes of the district to be paid by such * * * road." (Hurd's Stat. 1917, p. 1127.) They con-

tend that the fractional figures are required by the statute as construed by this court in *People* v. *Chicago and Interurban Traction Co.* 267 Ill. 510, and not being inserted in the classification such classification must be held invalid as to the tax against the highways. The statute undoubtedly intended that the fractional figures should be inserted in the classification, showing the proportion of the assessment to be paid by the public road or railroad. However, as argued by counsel for appellants, the total assessment on the district is given and the total assessment against the highways of this township, and it would be a very simple question of mathematics to figure the proportion as between the total assessment and the assessment against the highways of this township. It is further argued by counsel for appellants that all that is required is a substantial compliance with the statute on this question. In view of the record in this case we do not think this objection is fatal to this road assessment.

It is further argued by counsel for appellees that the record in this case does not show that a resolution was ever adopted by the commissioners, as provided by section 26 of the Farm Drainage act, which must form the basis of a levy for an assessment. The method of levying an assessment such as this under the special Farm Drainage act is not governed by section 26 of the Farm Drainage act but by section 62 of that act. This last named section does not require a resolution in the form provided for in section 26. This distinction was clearly stated by this court in *People* v. *Bentley, supra.* The record on this question is in accordance with the requirements of said section 62.

Appellants on the trial objected to the proof on the question as to whether the highways were benefited by the improvement. The trial court overruled the objection, and appellees introduced twelve witnesses who testified on that question and appellants introduced eleven witnesses who testified on the same subject. We have held that testimony

is competent, on application by the collector for judgment and order of sale, on the question whether the assessment exceeds the benefits, as such hearing is the first opportunity, under the Farm Drainage act, a land owner has to be heard upon that question. (*People* v. *Welch,* 252 Ill. 167; *People* v. *Brown,* 253 id. 578; *People* v. *Garner,* 267 id. 396.) No judgment and order of sale of the highways could be rendered on application of the collector, and the only remedy to collect the tax was to obtain a judgment against appellees in an action at law, and if not paid, follow it up by *mandamus.* (*Highway Comrs.* v. *Drainage Comrs.* 127 Ill. 581.) When such an action is brought the commissioners have the same right to be heard on that question as a private owner has when the collector applies for judgment and order of sale.

Counsel for appellants insist that the classification roll showed the highways would be benefited $3000; that no appeal was taken from the order confirming it and that the assessment was for only about one-half that amount, and that appellees are estopped to deny that the highways were benefited by the improvements to the amount assessed. In *People* v. *Whitesell,* 262 Ill. 387, it was held the classification became binding on the land owners for their respective proportion of the cost of the work but such classification did not and could not authorize an assessment upon the classification in excess of the benefits to the land, and that the owner had the right to a hearing on that question. Appellees had a right to be heard on the question whether the roads were assessed more than they were benefited, and they introduced a large number of witnesses to show that the roads received no benefits from the improvement for which they were assessed. Appellants introduced substantially the same number of witnesses to show that the water drained off more rapidly by reason of the improvement and that the roads received some benefit from it, but we do not un-

derstand that the testimony on the part of appellants shows clearly that the roads were benefited to the extent they were assessed. In our judgment the evidence justified the conclusion that the highways, if benefited at all by the improvement, were not benefited to the extent they were assessed. It was held in *People* v. *Soucy,* 261 Ill. 108, that the question whether the lands are benefited by a proposed improvement is conclusively settled at the time the classification is made and confirmed, but the land owner still has the right, when an assessment is made, to be heard on the question whether the assessment exceeds the benefits. On that theory appellees were estopped to deny the roads received some benefits from the improvement, but they had the right to show that the roads were not benefited to the amount of the assessment. Proof that there were some benefits was not proof that the assessment equaled the benefits. Appellees were estopped to deny that there were any benefits, and the proof furnished no basis for determining what amount of the assessment was valid. On the other hand, appellants' proof that the highways received some benefits afforded no basis for determining whether the assessment equaled or exceeded the benefits.

No propositions of law or fact were held by the court, and we do not know definitely the trial court's reasons for finding the issues for appellees and rendering judgment in their favor. The Appellate Court's opinion seems to be based on the fact that the assessment was void because meetings were held outside of the district. In view of what we have said on this question the judgments of the Appellate and circuit courts should be, and they are accordingly, reversed and the cause remanded to the circuit court.

*Reversed and remanded.*