THE PEOPLE *ex rel.* Edward Zilm, County Collector, Appellee, *vs.* LEVI CARR *et al.* Appellants.

*Opinion filed October 16, 1914—Petition stricken December 2, 1914.*

1. DRAINAGE—*adoption of resolution for assessment constitutes the levy.* The adoption, by farm drainage commissioners, of the resolution provided for in section 26 of the Farm Drainage act constitutes the levy of the assessment to be spread against the lands in the district and must precede the making of the contract for the construction of the work of the district.

2. SAME—*mere fact that resolution was signed by commissioners and filed with clerk is not sufficient.* The mere fact that the resolution provided for in section 26 of the Farm Drainage act was signed by the commissioners and filed with the clerk does not establish a valid levy, but it must appear that the resolution was adopted at a legal meeting of the commissioners.

3. SAME—*adoption of resolution must be shown by the drainage record.* The record which section 2 of the Farm Drainage act provides shall be kept by the clerk to show the proceedings of the commissioners is the only way in which the adoption of the resolution for the levy of a special assessment may be shown.

4. SAME—*what does not supply omission of record of adoption of resolution.* If the drainage record does not show the adoption of the resolution for the assessment at the meeting when it is claimed that it was adopted, either as originally written up or as amended, the omission cannot be supplied by a recital in the record of subsequent meetings, or in a resolution adopted at a subsequent meeting, that such action was taken at the former meeting.

5. JUDICIAL NOTICE—*county court does not take judicial notice of contents of record except in the proceeding before it.* A third attempt to levy a drainage assessment against certain lands, after the land owner has successfully prosecuted appeals from the judgments in the two former proceedings, is not the same proceeding as the former ones, and in order to sustain a claim that an objection made in the third proceeding could have been urged in the former ones it is incumbent upon the People to offer in evidence such portions of the record in the other cases as will disclose that fact, as the county court will not take judicial notice of the contents of its records except in the proceeding before it.

6. APPEALS AND ERRORS—*when objection to drainage record is not foreclosed by former appeals.* An objection that the drainage record does not show any valid resolution for the assessment may be urged on the third attempt to levy the assessment against cer-

tain land, where the judgments in the former proceedings were reversed on other grounds and remanded without any directions to the county court, and it does not appear from the opinions filed in such cases that the objection was considered or could have been considered on the errors assigned, or that the drainage record was before the court for consideration. (*Morgan Creek Drainage District* v. *Hawley*, 255 Ill. 34, *Semple* v. *Anderson*, 4 Gilm. 546, *Ogden* v. *Larrabee*, 70 Ill. 510, and *Lusk* v. *City of Chicago*, 211 id. 183, distinguished.)

FARMER, J., dissenting.

APPEAL from the County Court of LaSalle county; the Hon. A. T. LARDIN, Judge, presiding.

L. W. BREWER, and LESTER H. STRAWN, for appellants.

BUTTERS & ARMSTRONG, BROWNE & WILEY, and CRAIG & CRAIG, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The county collector of LaSalle county applied to the county court of that county, at the May, 1913, term thereof, for judgment and an order of sale against lands of appellants located within Drainage District No. 1 of the town of Ophir, LaSalle county, for alleged delinquent drainage assessments. Appellants appeared and interposed numerous objections, only one of which need here be noticed, viz., that no resolution ordering any amount of money whatever to be raised by special assessment upon the lands of the district was passed or adopted by the drainage commissioners prior to letting the contract for the construction of the work of the district or prior to the completion of such work. The court overruled the objections and rendered judgment against the lands for the alleged delinquent assessments. This appeal has been prosecuted from that judgment.

The drainage district in question was organized under the Farm Drainage act, the order declaring the district fully organized having been entered on January 25, 1905. On

March 1, 1905, commissioners were elected. On June 17, 1905, these commissioners completed a classification of the lands in the district and gave notice of a meeting to be held within the district on July 10, 1905, to hear objections to the classification. Various changes were made in the classification of lands at that meeting and a modified classification roll was made and adopted. Certain land owners, not including any of the appellants here, appealed to the county court from the order of the commissioners adopting and confirming the modified classification. A jury empaneled in the county court upon that appeal made a new classification of all the lands in the district. Thereafter the commissioners advertised for bids for constructing the work of the district, and on August 11, 1905, a contract was let for the construction of the work, the contract price being about $27,000. Afterwards the commissioners spread an assessment of $29,000, divided into three installments,—two of $10,000 each and one of $9000,—against the lands in the district, using the classification as made by the jury in the county court as a basis for spreading the assessment. Numerous land owners paid the first installment of the assessment spread against their lands. Appellants refused to pay this installment and successfully resisted an application made by the county collector for judgment and an order of sale against their lands, the objection made and sustained being that the commissioners, in spreading the assessment, had erroneously followed the classification made by the jury in the county court instead of the modified classification made by the commissioners on July 10, 1905. (*Carr v. People*, 224 Ill. 160.) After the decision was rendered in the case just referred to, the commissioners again attempted to spread the assessment of $29,000 against the lands of the district in accordance with the modified classification adopted by them on July 10, 1905. Appellants refused to pay the assessment and successfully resisted the application of the county collector for judgment and order of sale

against their lands, the grounds upon which judgment was refused being set out in the opinion filed in *People* v. *Carr*, 231 Ill. 502. In the meantime the work of the district had been completed and all of the land owners except appellants had paid the assessments spread against their lands. No further action was taken by the commissioners with reference to making or spreading an assessment against appellants' lands until February 8, 1913, when the commissioners met within the district and adopted a resolution in which, among other things, it was recited that at the meeting of July 10, 1905, above mentioned, after the land had been classified, the following resolution was adopted: "Resolved by the drainage commissioners of Drainage District No. 1 of the town of Ophir, LaSalle county, State of Illinois, that it be, and it is hereby, ordered that the amount of $29,000 be raised by special assessment upon the lands of the district aforesaid as the same may be necessary, and that such amount be and is apportioned among the several tracts in the name of the owner thereof, when known, according to acres of each and its figure of classification on the graduated scale, so that each tract may bear its equal burden in proportion to benefits;" that said resolution was inadvertently mislaid and temporarily lost and was not filed at said meeting but was afterwards found and was filed with the clerk of the commissioners on August 10, 1905, and that it was consequently inadvertently omitted from the minutes of the meeting held on July 10, 1905; that a meeting of the commissioners was held on August 10, 1905, to open bids for constructing the work of the district and was adjourned to August 11, 1905, when the bid of G. A. Williams was accepted and a contract entered into with him for constructing the work of the district, and that at this meeting it was ordered that the assessment of $29,000 be divided into three installments, the first to be for the sum of $10,-000 and to be due August 10, 1905, the second to be for the sum of $10,000 and to be due February 1, 1906, and

the third to be for the sum of $9000 and to be due June 1, 1906. The resolution, after making other recitals not necessary to be noticed, directed the clerk of the district to write up and restore the minutes of the meetings of August 10 and 11, 1905, in order to show what was transacted at those meetings as recited in the resolution. The meeting of July 10, 1905, which was called for the purpose of considering objections to the classification, and the meeting of March 1, 1905, which was held for the purpose of electing commissioners, were the only meetings prior to that of February 8, 1913, held within the boundaries of the drainage district. The meetings of August 10 and 11, 1905, were not held within the district, but were held at the office of the attorney for the commissioners in the city of Ottawa. The minutes of the meeting of July 10, 1905, as the same appear in the drainage record, do not show the presentation or adoption of any resolution. From a file-mark on the resolution above set out it appears that it was filed with the clerk of the commissioners on August 10, 1905, and as so filed it was signed by all the commissioners. In accordance with the directions contained in the resolution of February 8, 1913, the clerk thereafter wrote into the drainage record the minutes of the meetings of August 10 and 11, 1905, showing the proceedings recited in the resolution to have been taken at those meetings, but no change in or addition to the record of the minutes of the meeting of July 10, 1905, was made by the clerk. The commissioners then spread the proportionate part of an assessment of $29,000 against appellants' lands, based on the classification as modified by them at the meeting of July 10, 1905, and appellants having refused to pay the assessments against their lands, the assessments were returned as delinquent and the application first above mentioned for judgment and an order of sale was made to the county court. This application was based upon a return made by the treasurer of the drainage district showing that the assessments were spread

against appellants' lands on February 8, 1913, by virtue of a levy made July 10, 1905.

Appellee contends that the resolution ordering $29,000 to be raised by special assessment upon the lands of the district was adopted by the commissioners at the meeting held July 10, 1905, and in support of this contention relies entirely upon the record of the meeting of February 8, 1913, showing the adoption at that meeting of the resolution which recites that a levy of $29,000 was made at the meeting held July 10, 1905, and upon the record of the meeting of August 10, 1905, which was written up by the clerk after February 8, 1913, and which also refers to the adoption of a resolution on July 10, 1905, levying the sum of $29,000. Appellee does not contend that the resolution was passed at any other time or that any other meeting was ever held within the district at which such a resolution could have been adopted.

In support of their objection that no such resolution was adopted prior to letting the contract for the work or prior to the completion of the work, appellants offered in evidence all that portion of the drainage record which had been written up prior to February 8, 1913, including the minutes of the meeting of July 10, 1905, and it appears therefrom that no record was made of the adoption of the resolution in question at the meeting of July 10, 1905, or of its adoption at any other time. Appellants also called numerous witnesses to show that no such resolution was, in fact, adopted at the meeting of July 10, 1905. Fred T. Davis, who was one of the commissioners on July 10, 1905, but who had ceased to hold such office before February 8, 1913, testified that he attended the meeting of July 10, 1905, and that no such resolution was adopted while he was present, but that later,—and he thought it was when the bids were opened, on August 10, 1905,—the three commissioners signed such a resolution at the office of their attorney in Ottawa. J. E. Hill, who was town clerk and *ex-officio* clerk of the

265 – 15

commissioners on July 10, 1905, and who had continued to hold such office until and including February 8, 1913, testified that he attended the meeting of July 10, 1905, but that James P. Garland, one of the commissioners, kept the minutes of that meeting, and that the witness copied them into the drainage record after they had been written up and turned over to him by the attorney for the commissioners; that there was no record of the adoption of the resolution in question in the minutes of that meeting and that no such resolution was passed while the witness was present. He further testified that the record of the meeting of February 8, 1913, which covers seventy-eight pages of the drainage record, was prepared and handed to him. by one of the attorneys for the commissioners prior to the meeting of February 8, 1913; that he does ·not know whether or not the matters and things recited therein are true, and that he did not furnish any information upon which to base the recitals contained in the record of the minutes of the meeting of February 8, 1913, and in the resolution passed at that meeting. James P. Garland, the commissioner referred to in the testimony of Hill, testified that he acted as clerk at the meeting held July 10, 1905, and kept correct minutes of the proceedings had at that meeting, and that those minutes contained no mention of the adoption of any resolution levying $29,000. . Six other witnesses testified that they attended the meeting of July 10, 1905, and that no such resolution as appellee claims was passed at that meeting was presented or adopted. No witness testified that any such resolution was, in fact, adopted, but appellee, as hereinbefore stated, relies entirely upon the record to sustain its position, and contends that the record imports absolute verity and cannot be impeached by the testimony of witnesses.

Section 26 of the Farm Drainage act provides that the commissioners, by resolution, shall order such amount of money to be raised by special assessment upon the lands of the district as may be necessary, and that such amount shall

be apportioned among the several tracts in accordance with the classification finally established. The adoption of such resolution constitutes the levy of the assessment to be spread against the lands of the district and must precede the making of the contract for the construction of the work of the district. As we said in *People* v. *Kuns,* 248 Ill. 42: "This court has held repeatedly that a drainage district under the Farm Drainage act has no power to create in advance, either under the Farm Drainage act or under the Levee act, any indebtedness for completing an improvement and then levy an assessment to meet it." It necessarily follows that if appellants established by competent evidence that no such resolution as is required by said section 26 was adopted by the commissioners prior to the time the contract was let for the construction of the work of the district, then their objections to the application of the county collector for judgment and order of sale against their lands should have been sustained. The mere fact that such a resolution was signed by the commissioners and filed with the clerk does not establish a valid levy, but it must appear that the resolution was adopted at a legal meeting of the commissioners. (*People* v. *Warren,* 231 Ill. 518.) Section 2 of the Farm Drainage act provides that the clerk of the commissioners shall keep in a well-bound book, to be known as the drainage record, a record of the proceedings of the commissioners, and it is only by this record that the adoption of such resolution can be shown. (*People* v. *Carr, supra; People* v. *Warren, supra.*) Not only does the record of the proceedings of the meeting of July 10, 1905, fail to show the adoption of a resolution levying $29,000, or any other sum, but it was affirmatively shown by the testimony of numerous witnesses who attended that meeting that the record of the proceedings there had speaks the truth and that no such resolution was adopted. The recital in the record of the proceedings of subsequent meetings, or in a resolution adopted at a subsequent meeting, that such action had been

taken at the meeting of July 10, 1905, will not avail to supply the omission, if any, in the record of the proceedings of the meeting of July 10, 1905. It is true, as contended by appellee, that the clerk had the power to amend the record of the proceedings of that meeting so that the same would show the adoption of the resolution in question, (*County of DuPage* v. *Commissioners of Highways*, 142 Ill. 607; *Board of Education* v. *Trustees of Schools*, 174 id. 510; *People* v. *Zellar*, 224 id. 408;) and that had the record been so amended it could not have been contradicted by parol, (*People* v. *Carr, supra*,) but appellants' only remedy, in case no such resolution was, in fact, adopted at the meeting of July 10, 1905, would have been an action to recover the damages sustained by them by reason of the making of a false record of the proceedings of that meeting. The clerk, however, did not amend the record of the minutes of the meeting of July 10, 1905, and the record of the proceedings had at that meeting still fails to show the adoption of any resolution levying an assessment against the lands of the district.

Appellee contends, however, that as the objection above considered was not presented in the case of *Carr* v. *People, supra*, nor in *People* v. *Carr, supra*, it cannot now be urged to defeat the assessments extended against appellants' lands. Appellee's principal argument in support of this contention is based upon the assumption that the drainage record was before us in each of the former cases, and that the objection here made to the $29,000 assessment therefore necessarily appeared upon the face of the record in each of those cases, although it is also argued that as this objection could have been made to the application of the county collector for judgment in each of the former cases it cannot be interposed in this proceeding. That the objection was not considered by this court in either of the former cases is apparent from the opinions filed therein. Whether this error in the former judgments appeared upon the face of

the record which was brought to this court in either of those cases is not disclosed by the opinions rendered, and it is not made to appear in this case that the question here raised could have been presented to this court upon either of the two former appeals. The case at bar is not the same proceeding as either of the two former *Carr cases* although it is between the same parties and involves the same subject matter, and the county court therefore could not take judicial notice of the contents of the record in either of the two former cases. A court will take judicial notice of its own records and thus dispense with proof identifying such records, but it will not take judicial notice of the contents of any of its records except the one in the proceeding before it. (17 Am. & Eng. Ency. of Law, 926; 16 Cyc. 918; *Streeter* v. *Streeter,* 43 Ill. 155; *National Bank of Monticello* v. *Bryant,* 13 Bush, 419; *McNish* v. *State,* 47 Fla. 69.) If the error now relied upon by appellants for reversal appeared upon the face of the record in either of the former cases between these parties involving this same subject matter, in order to bring that fact to the attention of the court it was incumbent upon appellee to offer in evidence upon the hearing such portions of the record in the former cases as would disclose that fact. Not having done so, we are not warranted in assuming that the errors above considered could have been presented to this court upon the record made in either of the two former *Carr cases,* as we can review only the matters presented to the county court and its action thereon in this case.

In *Morgan Creek Drainage District* v. *Hawley,* 255 Ill. 34, which appellee contends conclusively settles this question in its favor, the plaintiffs in error urged a reversal of the judgment "for alleged errors concerning matters contained in the record at the time it was reviewed on the former writ of error," and in holding that such alleged errors would not be considered, we said: "That writ of error brought the case, as to Hawley, to this court in its

entirety, and it was the duty of the plaintiff in error to present all the existing grounds for the reversal of the judgment. A party cannot on a second writ of error take advantage of any error which existed and might have been assigned on the former record." In the case at bar, however, as we have above pointed out, it does not appear that the record in either of the former cases disclosed the defect in the drainage record. It therefore does not appear that appellants are attempting to "take advantage of any error which existed and might have been assigned on the former record," and for this reason what was said in the *Hawley case* has no application to the case now before us.

In support of its contention appellee also cites and relies upon *Semple* v. *Anderson,* 4 Gilm. 546, and *Ogden* v. *Larrabee,* 70 Ill. 510, and says that these cases lay down the principle which should be applied here. In the first mentioned case the doctrine was announced that "in this court it will be presumed, when a party sues out a writ of error and brings his case here for adjudication and the same is determined upon the merits and errors assigned, that he has no further objection to urge against the record, and that if errors exist which are not so assigned, that they are waived;" and in the *Ogden case* it was said to be a general rule that "where a cause has been heard in the circuit court, reviewed in the Supreme Court and has been remanded with directions as to the decree that shall be entered, a party cannot, on a subsequent appeal, assign for error any cause that accrued prior to the former decision." The rules laid down in these cases have been repeated and applied in numerous subsequent cases.

The doctrine announced in the *Semple case* is not applicable here because the decisions in the two former *Carr cases* did not determine the merits of the controversy now existing between the parties. So far as appears from the opinions filed in those cases there were no assignments of error calling upon this court to decide whether a valid as-

sessment had been levied by the commissioners which could be spread against the appellants' lands. That question was therefore not judicially determined in either of those cases. The judgment in each of the former cases was reversed and the cause was remanded to the county court without any directions to the lower court. The rule laid down in the *Ogden case* is applicable only when a cause is remanded with directions to enter a certain decree, and can therefore have no application to the case now before us.

In support of its contention that as the objection above considered could have been, but was not, made to the former applications of the county collector for judgment for delinquent assessments based upon this same drainage record it is now too late to urge such objection, appellee relies upon *Lusk* v. *City of Chicago,* 211 Ill. 183. In that case it appeared that the validity of an ordinance providing for a local improvement had been attacked and the objections made thereto had been sustained upon appeal and the cause remanded. When the case was re-docketed in the county court the objectors filed additional objections to the ordinance which had not been made upon the former hearing. In holding that no objection to the ordinance except such as had been urged in this court upon the appeal could be considered upon the second hearing in the county court, we said: "When the validity of the original ordinance was attacked at the first hearing all the grounds of objection as to the validity of the ordinance should have then been presented, and not having been then presented could not be presented afterwards or now. To hold that in the trial of a cause the constitutionality of a law or the validity of an ordinance may be attacked upon one ground and an appeal prosecuted and a decision of a court of review had upon that question, and when the cause is remanded and again placed upon the docket the same statute or ordinance may be attacked upon another ground requiring another appeal to determine the validity of the same

ordinance in the same proceeding, is a practice that can not be permitted to obtain;" and we further said in this connection: "It is a well settled rule that when a cause is litigated and that litigation prosecuted to a court of appeals and passed upon, all questions that were open to consideration and could have been presented, relating to the same subject matter, are *res judicata,* whether they were presented or not." The controlling fact upon which the decision in the *Lusk case* was based was that a certain ordinance had been attacked in this court by the appellants, who, after the cause had been remanded, sought to attack it on other and different grounds, and it was held that the appellants had waived all objections to the ordinance which were not presented upon the first appeal. In the case at bar, however, it does not appear that the drainage record, upon which the assessments involved in the former cases and in this case have been based, has ever before been before this court for consideration or that it was attacked by these appellants in either of the former cases. The doctrine announced in the *Lusk case* can therefore have no application here. On the contrary, the right to file additional objections in a case such as the one at bar after a judgment has been reversed and the cause remanded generally to the county court, and thereby present a defense which existed but was not presented at the former hearing or upon the appeal, has been recognized by this court in *Green* v. *City of Springfield,* 130 Ill. 515, and in *People* v. *Waite,* 243 id. 156.

We are therefore of the opinion that appellants were not precluded by the former proceedings from presenting the objection in this case that no resolution ordering any amount of money whatever to be raised by special assessment upon the lands of the district was passed or adopted by the drainage commissioners prior to letting the contract for the construction of the work of the district or prior to the completion of such work.

As the record of the proceedings of July 10, 1905, fails to show the adoption of any resolution levying an assessment the objection of appellants should have been sustained.

The judgment of the county court is reversed and the cause remanded, with directions to enter a judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARMER, dissenting.