(No. 10651.—Judgment affirmed.)

ALENA STOKES *et al.* Plaintiffs in Error, *vs.* THE BAY BOT-
TOMS DRAINAGE DISTRICT, Defendant in Error.

*Opinion filed April 19, 1917—Rehearing denied June 6, 1917.*

1. DRAINAGE—*in organizing drainage district under the Levee
act the county court exercises special and limited jurisdiction.* In
organizing a drainage district under the Levee act the county court
exercises a special and limited jurisdiction, which can be called
into action only by the filing of a petition, which, among other re-
quirements, must set forth a description of the proposed starting
points, routes and termini of the ditches, and this jurisdiction must
appear on the face of the record.

2. SAME—*when a petition has sufficient description of ditches to
give jurisdiction.* A petition to organize a levee drainage district
which gives the starting points, routes and termini of the ditches
is a sufficient compliance with the statute to give the county court
jurisdiction, and the fact that the notice which section 3 of the
statute directs to be given is required to contain a general descrip-
tion of the proposed work does not add any further requirement to
the petition. (*Aldridge* v. *Clear Creek Drainage District,* 253 Ill.
251, explained; *Tennessee Drainage District* v. *Moye,* 258 id. 296,
and *Wayne City Drainage District* v. *Boggs,* 262 id. 338, criticised.)

3. SAME—*affidavit setting forth facts required by section 5 of
the Levee act is not essential.* An affidavit setting forth the facts
required by section 5 of the Levee act is not essential, and in the
absence of a bill of exceptions a finding of the facts based on testi-
mony heard in open court is a sufficient preservation of evidence.

4. SAME—*what variance between notice and petition is not ma-
terial.* The general description required by section 3 of the Levee
act to be contained in the notice is to be derived from the descrip-
tion in the petition, but under the proviso in that section that it
shall not invalidate the notice if no description of drains or ditches
is given, a slight variance between the notice and petition as to the
starting point for the main ditch is not material.

5. SAME—*judgment confirming commissioners' report of cost of
work and declaring district organized is a final order.* Where the
commissioners have made their report of the probable cost of the
proposed drainage system, including all incidental expenses and the
cost of the proceedings therefor, the judgment confirming such re-
port and declaring the district to be organized is a final order, and
the jurisdiction of the court to enter such order cannot be affected
by subsequent events.

6. SAME—*commissioners cannot make assessment for a greater amount than estimated cost of work.*  The assessment of benefits from a proposed drainage district is made for the purpose of raising the money which the commissioners, and the court by the approval of their report, have determined is required to pay the cost of the work and all incidental expenses, and the commissioners have no power, in the first instance, to make an assessment for a greater amount than the estimated cost of the work.

7. SAME—*the court does not lose jurisdiction because amount of benefits assessed by the jury does not equal estimated cost of improvement.*  The court does not lose jurisdiction of a proceeding to organize a drainage district because the total amount of benefits assessed by the jury does not equal the estimated cost of the improvement, as the provision in section 17*b* of the Levee act providing that the verdict, when complete, shall produce the total sum of the estimated cost of the proposed work is not mandatory but merely authorizes such a verdict if the facts warrant it.

WRIT OF ERROR to the County Court of Pope county; the Hon. W. A. WHITESIDE, Judge, presiding.

CHARLES DURFEE, for plaintiffs in error.

JOHN W. BROWNING, and C. L. V. MULKEY, (JAS. W. & EDWARD C. CRAIG, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

On December 18, 1911, a petition was filed in the county court of Pope county for the organization of a drainage district under the Levee act, comprising lands in the counties of Pope, Massac and Johnson.  Nobody appeared to object to the petition and proceedings were conducted in accordance with the statute, which resulted in the entry of an order on June 17, 1912, declaring the district established as provided by law, having the name of "Bay Bottoms Drainage District."  Afterward an assessment roll was made and filed.  At the time fixed for the hearing no objections were made to it and it was confirmed on July 16, 1913.  A writ of error was afterward sued out by some of the land owners, returnable to the April term, 1916, and

many errors were assigned. Upon a suggestion by the defendant of a diminution of the record, leave was granted to file a corrected transcript. This was done and some of the errors assigned were thereby obviated. There is no bill of exceptions in the record. Those errors assigned which remain, question both the order declaring the district established and the order confirming the assessment roll. The most important error questions the sufficiency of the petition to confer jurisdiction on the county court, and therefore goes to the foundation of the whole proceeding.

In organizing a drainage district under the Levee act the county court exercises a special and limited jurisdiction and its authority must appear on the face of the record. Such jurisdiction can be called into action only by the filing of a petition, which, among other requirements, must set forth a description of the proposed starting points, routes and termini of the work. The plaintiffs in error insist that the petition for the organization of the district did not comply with the requirements of the statute and was insufficient to give the county court jurisdiction.

In regard to the general description of the lands proposed to be affected, their condition and the necessity for drainage and the organization of the district, the petition made the following statements: "They further represent that said lands are swamp lands, through which the Big Bay creek runs, which is a sluggish stream with a very slight fall through this proposed district, in which the flow of the water is greatly impeded by drifts, logs, trees and the accumulation of mud in its bed, and the said Big Bay creek, with some small tributaries, is the only natural drainage in said proposed district and does not afford sufficient drainage for said territory. They further state that the territory to be embraced within said proposed district is traversed by a number of ponds, which do not empty into or in any way connect with the said Big Bay creek or other outlet, and which are filled the greater part of the year with

water, which becomes stagnant and produces malarial and other diseases, which would be prevented and avoided by proper drainage; that said ponds are filled up to a large extent with fallen and decaying trees and other rubbish and with a luxuriant growth of underbrush and vegetation, which, decaying and decomposing, breeds disease, making the territory unhealthful; that said ponds are so situated that when properly drained as proposed in this petition they would be good, tillable farm lands and very fertile and would grow as good or better crops than the present high lands of said district; that the proposed drainage of said ponds and low and overflow lands by ditches and dredging, cleaning out, straightening and otherwise improving the condition of the Big Bay creek, and connecting ditches from the pond regions therewith and constructing embankments, is necessary for the proper drainage of said lands and the betterment of the sanitary conditions in and around said proposed district; that the name of said proposed drainage district shall be the 'Bay Bottoms Drainage District;' that the territory proposed to be organized into a drainage district consists of a fertile body of land about ten miles in length and of an average of about three miles in width, with no natural drainage except said Big Bay creek, located along and near the northern side of said body of land, and that the central and southern part of said body of land has no drainage with an outlet but is traversed by ponds and swamps, which fill up with water in overflows from the said Big Bay creek, which are frequent, and, having no outlet, remain full or partly full of water the greater part of the year. Petitioners state that the said Big Bay creek empties into the Ohio river about six miles below the eastern extremity of the proposed drainage district, and when dredged and otherwise improved as herein proposed, and with a ditch or ditches constructed through the pond region intersecting the Big Bay creek, will afford good drainage to said territory."

In regard to the description of the proposed improvement the petition was as follows: "The work proposed to be done is to dredge, clean out, straighten and improve the Big Bay creek, beginning at the point where the said creek enters the proposed district on the western boundary thereof and terminating on the eastern boundary line of said district where said creek flows out of said district as proposed; also to dig one main ditch, commencing at the center of section 6, township 14, south, range 5, east, in Pope county, Illinois, and running thence in an easterly direction along the line of lowest levels, through sections 6, 5, 4, 3, 2 and 1 in said township, and on in an easterly direction through sections 6, 7 and 8 in township 14, south, range 6, east, in said county and State, and terminating in Big Bay creek, in said section 8."

It is contended that the character of the proposed ditches or drains is not sufficiently described to give the court jurisdiction. The statute states what shall be set forth in the petition, and if the description of the ditches or drains complies with the requirements of the statute it is sufficient. The court will not require a more detailed description than the legislature has seen fit to require as a condition for the exercise of the jurisdiction imposed upon the court. The legislature has required merely that the starting points, routes and termini of the ditches shall be stated, and this has been done. Two ditches, only, are referred to, and the starting point, route and terminus of each are stated. The one follows the lowest levels from its starting point to its outlet and the other follows the course of the creek throughout, dredging and cleaning out the channel and incidentally straightening its curves. There is no doubt as to the locality of each ditch from beginning to end. The statute says nothing about any further statement in the petition of the character of the improvement. It is true that the notice which section 3 directs to be given is required to contain a general description of the proposed

work, but this cannot be held to add any further requirement to the petition. The general description to be contained in the notice is to be derived from the general description contained in the petition. The ditches may be described by starting points, routes and termini, and if the petition states that levees or embankments are to be constructed the notice will also refer to them. The provision of section 12 that the commissioners shall not be confined to the points of commencement, routes or termini of the drains or ditches, or the number, extent or size, or the manner of constructing the same, or the location, plan or extent of any levee, ditch or other work to that proposed by the petitioners, but shall locate, design, lay out and plan the same in such manner as they shall think will drain or protect the petitioners' lands with the least damage and greatest benefit to all lands to be affected thereby, does not tend to indicate that any greater particularity of description of the ditches is required than is specifically stated in section 2. It certainly cannot be inferred from the fact that the commissioners are not confined to the plans mentioned in the petition that therefore greater particularity and minuteness are required in the setting forth of those plans than if the commissioners were so confined.

In *Aldridge* v. *Clear Creek Drainage District,* 253 Ill. 251, we said, speaking of the petition: "It amounted only to a request to the court to adopt and carry out an indefinite and uncertain scheme for which the statute gave no authority. The evident purpose of the statute was, that those who would be specially assessed to pay the costs of the improvement should know from the petition specifically what was proposed to be done, so as to form a judgment as to the necessity or propriety of the work and its advantages or disadvantages. It was not intended that some scheme or plan should be evolved and developed by commissioners under the management of the court, and the starting points, route and terminus of the proposed work

and the location of levees, drains and ditches should be determined, without any basis in the petition other than a request to form a drainage district. The statute required that the petitioners should themselves propose, in general terms, a scheme or plan of the desired work. If drainage and levee work was proposed the commissioners were required to examine the lands and determine whether the starting point, route and terminus of the proposed work were in all respects proper and feasible, and if not, what would be so. They were not confined to the point of commencement, route or termini of the drains or ditches or the location, plan or extent of any levee as proposed by the petitioners, but might propose changes to be submitted to the court. Without any description in the petition they could not comply with the statute, and the description was an essential element of the petition."

In that case the petition contained no description whatever of the proposed starting point, route or terminus of any drain, ditch, levee, embankment or grade, and when it was there said that the statute required the petitioners to propose a scheme or plan of the desired work, it was not intended to be inferred that the scheme or plan should be any more complete than the statute itself indicated. It was necessary to state the ditch or ditches proposed to be constructed, and the statute requires them to be described by their starting points, routes and termini, and if levees or other work were proposed they also were required to be similarly described, or if the repair and maintenance of ditches, levees or other work already constructed were contemplated, a general description of such work was required by section 2 of the statute, and there is no intimation in the opinion that the petition should contain any more particular details of description than the statute itself required.

In *Tennessee Drainage District* v. *Moye,* 258 Ill. 296, after quoting the statement in *Aldridge* v. *Clear Creek Drainage District* that "the petitioners should themselves

propose, in general terms, a scheme or plan of the desired work," the opinion states that "it was intended that the starting point, terminus, route and character of the work to be done should be described in such terms in the petition that the property owners, as well as the others interested, can readily understand the general character of the work." No fault can be found with this statement of the degree of particularity required in the petition, but the term "character of the work" should not be regarded as meaning details of the work. The character of the work, whether the construction of new ditches, levees, embankments or other work or the repair and maintenance of ditches, levees, embankments or other work already constructed, must necessarily be stated and is required to be described to the extent mentioned in the petition,—that is, by the starting points, routes and termini,—but any further description in the petition is not essential to the jurisdiction of the court. The case of *Wayne City Drainage District* v. *Boggs,* 262 Ill. 338, followed *Tennessee Drainage District* v. *Moye,* and those two cases carried the particularity of description essential to the petition beyond the requirements of the statute. If the only work contemplated in the organization of a drainage district is the construction of new drains or levees, a description which states the starting point, route and terminus of the drain is a compliance with the statute. If the purpose contemplated is the repair and maintenance of ditches, levees or other work previously constructed, the statute requires a general description of the same, with such particulars as may be deemed important. The petition was sufficient to give the county court jurisdiction of the subject matter.

The plaintiffs in error rely upon the case of *People* v. *Swearingen,* 273 Ill. 630. In that case, in which it was sought to establish a combined system of drainage and protection from wash and overflow, independent of levees for agricultural and sanitary purposes, it was proposed to con-

struct a system of ditches in the district, but the starting point of only one of such ditches was given and there was no description of the number or location of the various ditches.

The contention of the plaintiffs in error that it appears from the petition that the main ditch and the Big Bay creek drain two different watersheds is clearly unfounded, for the petition alleges that the land through which the main ditch is to be constructed is occupied by ponds, which are filled with water from the overflows of the creek.

The objection that the record contains no affidavit setting forth the facts required by section 5 of the Levee act, and that the evidence as to such facts is not otherwise preserved, is equally unfounded. The order of the court finds the facts from the testimony heard in open court. The statute does not require the proof to be made by affidavit, and the finding of the facts based upon testimony heard in open court is sufficient, in the absence of a bill of exceptions.

The notice of the filing of the petition given by the county clerk states the starting point of the main ditch to be in the center of the northeast quarter of the southeast quarter of section 6, while the petition gives such starting point as the center of section 6. Section 3, which requires the notice, contains a proviso that it shall not invalidate the notice if no description of drains or ditches is given, and under this provision the slight variance in the starting point is not material.

The total amount of the assessments fixed by the verdict of the jury did not equal the estimated cost of the improvement, and the plaintiffs in error insist that upon the return of such verdict the court lost jurisdiction and should have entered an order dismissing the proceedings, and could not, in any event, have confirmed the assessment. The verdict of the jury did not affect the jurisdiction of the court as to an order entered a year before the verdict was returned, when the court had jurisdiction of the sub-

ject matter. The commissioners having made their report of the probable cost of the work, including all incidental expenses and the cost of the proceedings therefor, the judgment confirming such report and declaring the district to be organized is a final order, the jurisdiction to enter which cannot be affected by subsequent events. The assessment of benefits is made for the purpose of raising the money which the commissioners and the court, by the approval of their report, have determined is required to pay the cost of the work and all incidental expenses. The commissioners have no power to make an assessment for a greater amount than the estimated cost of the work. (*Morgan Creek Drainage District* v. *Hawley,* 240 Ill. 123.) Section 17*b* of the Levee act provides that the verdict, when complete, shall produce the total sum of the estimated cost of the proposed work and the proceedings incident to the same, but in *Spring Creek Drainage District* v. *Elgin, Joliet and Eastern Railway Co.* 249 Ill. 260, it was held that the word "shall," as there used, was to be regarded as directory, only, and not mandatory, and that while no tract of land could be assessed more than it would be benefited by the proposed work or in a greater amount than its proportionate share of the estimated cost, the jury might, if the facts warranted it, return a verdict which would produce the total sum of the estimated cost of the proposed work and the proceedings incident to the same. Where an assessment has been spread for the amount of the estimated cost, if the jury finds that any tract has been assessed more than its proportionate share of the cost and returns a verdict for a less amount against that tract, the total amount of the verdict will necessarily be less than the amount of the assessment roll, but it does not necessarily follow that the total amount of the benefits to all of the lands in the district does not equal the estimated cost of the improvement. The trial before the jury is not for the purpose of ascertaining the amount of benefits accruing from the con-

struction of the work, but is for ascertaining whether each particular tract will be benefited to the amount which is assessed against it and if such amount is greater than the proportionate amount of the cost which should be borne by that tract.

It is insisted that the description of the boundaries of the district is so uncertain that the lands included cannot be certainly determined. The filing of the corrected transcript of the record has corrected the defects in the description, so that the boundaries can now be ascertained with certainty.

A number of other questions have been raised and argued by plaintiffs in error and we have considered them all, but none of them would justify a reversal of the judgment and we do not consider them of sufficient importance to require an extended discussion in this opinion.

The judgment of the county court will be affirmed.

*Judgment affirmed.*