(No. 17842.—)

W. A. Kreitzer *et al.* Appellants, *vs.* C. S. Barnes *et al.* Appellees.

*Opinion filed October 25, 1928.*

Schneider & Schneider, for appellants.

Dobbins & Dobbins, for appellees.

Mr. Justice Duncan delivered the opinion of the court:

This is an appeal by W. A. Kreitzer and a number of other land owners in the Blackford Slough Drainage District from an order of the county court of Champaign

county denying their petition to abandon the work and abolish the district.

The Blackford Slough Drainage District was organized by an order of the county court of Champaign county entered March 9, 1925. The district as originally organized contained about 900 acres of land in Champaign and Ford counties. On April 20, 1925, over 1800 acres of land were added to the district by order of the county court of Champaign county and thereafter 90 acres more were added by consent of the owners thereof, making in all, as shown by the assessment roll, 2921.11 acres of land. After the additional lands had been annexed to the original district, on petition of the commissioners the county court on May 29, 1925, entered an order changing the character of the work to be done in the district and ordered an assessment of $25,800 against the lands thereof to pay the costs of the proposed work and the expenses of the organization of the district. On July 7, 1925, the commissioners filed their assessment roll of benefits and damages. After the assessment roll was filed the commissioners advertised for bids on the work of the district, which bids were to be considered and the contracts let on August 5, 1925. On that day the commissioners entered into two separate written contracts for the work of the district, one with R. D. Glick, of Fort Dodge, Iowa, for the open ditch work for $7342.99, and one with Robert Dillman, of Fisher, Illinois, for construction of the tile drain and concrete head wall of the district for $5306.71. The date for hearing on the assessment roll was set as July 22, 1925, but the hearing was continued from time to time until December 3, 1925, when the hearing was had before a jury, which returned its verdict on December 11, 1925. Motion for a new trial was filed by objectors, which was overruled and judgment was entered on the verdict on February 15, 1926. On November 3, 1925, the commissioners filed a report setting out their actions and proceedings to September 1, 1925,

and reporting that they had on August 5, 1925, entered into the contracts above mentioned for the construction of the work of the district. Objections to their report were filed by several land owners of the district, but after a hearing the court on December 31, 1925, approved the report. On September 14, 1925, the appellants filed their petition to abandon the work and to abolish the district under section 44 of "An act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," approved May 29, 1879, commonly called the Levee act, which is the act under which the district was organized. The petition had sixty-six signers, purporting to be the owners of 2321.2 acres of land in the drainage district. The petition did not set out the names of the owners of land in the district or allege the number of acres in the district, but did allege that the signers constituted a majority of the adult land owners of the district owning more than one-half of the land in the district. Seven signers of the petition were allowed by the court to withdraw their names from the petition. Objections were filed to the petition to abandon the work and abolish the district by the commissioners of the district, alleging (1) that no proper notice of the presentation of the petition had been given, as required by law; (2) that valid contracts had been entered into for doing the work of the district; (3) that thirty-three of the signers of the petition were not land owners of the district; (4) that seven names were signed to the petition without authority; (5) that all but two of the signers of the petition were not land owners in the district as originally organized; and (6) that the owners of land whose names were in fact signed to the petition did not constitute a majority of the owners of land in the district or own a majority of the land in the district. A hearing on the petition to abandon the work and abolish the dis-

trict was finally had in April, 1926, and on April 30, 1926, the county court entered an order denying the prayer of the petition and allowing an appeal from that order to this court.

Appellees have filed a motion in this court to dismiss the appeal on the ground that section 44 of the Levee act, under which the petition was filed, contains no provision for an appeal to this court from an order entered by a county court under that section. The motion was taken with the case for consideration. It is true that there is no provision for an appeal in section 44, but section 3 of "An act to give circuit courts of this State and the superior courts of Cook county, in term time, and judges thereof in vacation, concurrent jurisdiction with the county courts, in all matters pertaining to the organization of farm drainage districts and farm drainage and levee districts, and the operation thereof, and to repeal all acts in conflict herewith," approved June 5, 1909, (Smith's Stat. 1927, chap. 37, p. 870; Cahill's Stat. 1927, chap. 37, par. 151;) provides that "appeals may be taken from the final orders, judgments and decrees from either of the county or circuit courts to the Supreme Court." That section of the statute has been held constitutional in *Kline* v. *Barnes,* 250 Ill. 404, and under it this court has jurisdiction of this appeal, as decided in that case and in *Mason* v. *Browner,* 303 Ill. 511.

Section 44 of the Levee act as amended in 1927 (Smith's Stat. 1927, p. 1078; Cahill's Stat. 1927, p. 995;) provides, in substance, that at any time before the contract for the construction of the proposed work shall have been made, upon presentation to the county court of a petition signed by a majority in number of all the land owners of such district, and owning more than one-half in area of lands in the district to which the petitioners belong, praying that the whole system of proposed work may be abandoned and the district abolished, the court shall enter upon its records an order granting the prayer of such petition

upon condition that the petitioners pay all court costs within thirty days from the rendition of such order.

Appellants contend that the contracts entered into by the commissioners on August 5, 1925, are invalid and void because the assessment roll of benefits and damages had not been confirmed at the time they were executed, and that therefore on September 14, 1925, when the petition to abandon the work and abolish the district was filed, there was no contract for the construction of the work of the district. In other words, they contend that the commissioners of a levee drainage district have no authority to enter into contracts for work in the district before the assessment roll is confirmed. They rely upon the cases of *People* v. *Carr*, 265 Ill. 220, and *Drainage Comrs.* v. *Kinney*, 233 id. 67. Both of those cases involved districts organized under the Farm Drainage act and not under the Levee act. In the former case the court held that before assessments can be spread against the lands in a farm drainage district there must be adopted by the commissioners of such district a resolution ordering the amount of money to be raised which is spread in the assessment, and that the adoption of such resolution must be shown by the clerk's record of the commissioners' proceedings. In that case this court said: "Section 26 of the Farm Drainage act provides that the commissioners, by resolution, shall order such amount of money to be raised by special assessment upon the lands of the district as may be necessary, and that such amount shall be apportioned among the several tracts in accordance with the classification finally established. The adoption of such resolution constitutes the levy of the assessment to be spread against the lands of the district and must precede the making of the contract for the construction of the work of the district." In the *Kinney case* the drainage commissioners levied an assessment of $2533.88 for doing the work of the district. They then entered into a contract for the work of the district, under which $2472 more

than the original levy was expended. After the work had been completed and accepted the commissioners then attempted to levy an additional assessment to meet the $2472 deficit. The court held the commissioners had no authority to incur an indebtedness and then levy an assessment to pay it.

This court has held in levee drainage district cases that the commissioners have no power to create in advance an indebtedness for completing an improvement and then levy an assessment to meet it. (*Winkelmann* v. *Drainage District,* 170 Ill. 37; *Ahrens* v. *Drainage District,* id. 262; *Vandalia Drainage District* v. *Hutchins,* 234 id. 31.) But appellants cite no case, and we have been able to find none, wherein it is held that the assessment roll of benefits and damages must be confirmed before the commissioners can incur an indebtedness or make a valid contract for work. In farm drainage districts the adoption by the commissioners of a resolution under section 26 of the Farm Drainage act ordering such amount of money to be raised by special assessment as may be necessary constitutes the levy, which must precede the making of the contract for the construction of the work of the district. *People* v. *Carr, supra.*

The procedure in levying assessments in farm drainage districts is different from that in levee drainage districts. This court has held that there are two entirely separate and independent laws for levee and for drainage districts. (*Gauen* v. *Drainage District,* 131 Ill. 446.) In farm drainage districts the commissioners adopt the resolution provided for in section 26 after they have fixed upon the plans of the work of the district and adopted them. This resolution is not submitted to a court and no hearing is had thereon, but it is filed with the town clerk in town districts and with the clerk of the district, who is the county clerk, in special districts. The amount fixed by the resolution is thereafter extended against the lands of the district by the commissioners making out their assessment roll. In levee

districts there is a hearing in the county court on the report of the commissioners concerning the character of the work to be done in the district and the amount to be raised by assessment before an assessment roll may be prepared by the commissioners. The court approves the report of the commissioners and the estimates therein contained and orders that amount to be assessed against the land of the district. The court has determined that amount by the approval of the commissioners' report of probable total cost of work. The commissioners are then required to spread an assessment in the amount found by the court to be necessary and proper. They have no power to make an assessment for an amount greater than that fixed by the court as the estimated cost of the work. (*Stokes* v. *Bay Bottoms Drainage District,* 278 Ill. 390.) The spreading of the assessment is but mathematical, which determines no right and affects no interest. (*Cosby* v. *Barnes,* 251 Ill. 460; *People* v. *Schwank,* 237 id. 40.) This order of the court approving the commissioners' estimate and ordering the making of the assessment roll against the lands of the district, in levee districts, corresponds with the commissioners' resolution under section 26 of the Farm Drainage act, and constitutes and completes the levy of the commissioners in levee drainage districts when they make the assessment roll, subject to changes in amount as to specific property on hearing before a jury. Section 17 of the Levee act provides that upon entering the order the district becomes organized as a body politic and corporate, with the right to sue and be sued, and the commissioners appointed shall exercise the functions conferred on them by law.

Section 28 of the Levee act (Smith's Stat. 1927, p. 1072; Cahill's Stat. 1927, p. 991;) provides that upon the organization of a drainage district it shall in its corporate name, by its commissioners, from thenceforth have power to contract and be contracted with, sue and be sued, plead and be impleaded, and to do and perform, in the corporate name of

said district, all such acts and things as may be necessary for the accomplishment of the purposes of this act. Section 17 of the same act provides that after the order of the court organizing the district and approving the report of the commissioners and their estimate of costs, "the commissioners shall proceed to acquire the right of way and releases of damages for the construction of the proposed work, by agreement with the land owners so far as they may be able to agree with said land owners, and to make out an assessment roll." This section makes it clear that as soon as the order of the court approving the commissioners' report is entered, the commissioners may then proceed to acquire the right of way for the work if they can do so by agreement with the land owners. However, before the commissioners may acquire the right of way for their work by exercising the right of eminent domain they must first comply with section 17a of the Levee act by filing their "roll of assessments of benefits and damages" in the manner provided in section 17. The evident reason for that is, that all questions, not only as to the right of way and the amount to be paid therefor, but also the questions of benefits and damages, must be settled by litigation because the parties have not been able to agree thereon. Section 17 further provides that all railroads, public highways and municipal corporations to be affected by the proposed work, and the amount of benefits assessed, and damages, if any, accruing, to the track and right of way of the railways and public highways and roads, and the streets and alleys of such municipal corporations shall be included in the assessment roll, and that they shall, when directed by the court, also make an assessment of the annual amount of benefits which each tract will sustain by keeping said work in repair, and to maintain in operation pumping plants, if there be such in the district. Under section 17b a jury is to settle all questions of damages, the amount to be paid for right of way and the amount to be assessed as benefits, if a jury be desired. But there is

no provision in the Levee act anywhere that even indicates the commissioners cannot contract for work to be done in the district after the assessment roll is made out and filed by the commissioners. The assessment roll makes out a *prima facie* case for the commissioners as against all parties who compel litigation. Making contracts for work with contractors by the commissioners requires no litigation, and there is no more reason why commissioners are to be allowed to acquire the right of way and releases of damages for the construction of the proposed work by agreement with the land owners, if they can agree, than there is for allowing them to contract with contractors for work to be done. There is nothing in the statute that forbids such contract for work to be made after the assessment roll is filed, and there is no decision of this court, so far as we are aware, that has ever indicated it would be necessary to have the assessment roll confirmed before the commissioners can contract and make proper debts of the district within the amount of their levy, to be paid out of the proceeds of the levy.

Appellants cite in support of their contention certain special assessment cases arising under the Local Improvement act. The cases cited hold that no contract can be made for a local improvement until the passage of a valid ordinance authorizing the improvement, but those cases are of no assistance in determining the question involved in this case. Moreover, in section 75 of the Local Improvement act there is an express provision that the contract shall be let within ninety days after the term of court at which judgment of confirmation of the special assessment is entered. In this case the county court entered an order on May 29, 1925, approving the plans for the proposed work of the district and the commissioners' estimate of the cost thereof, and ordered an assessment of the amount of such estimate ($25,800) against the lands of the district. This order was entered after a hearing and after notice as provided by law.

On July 7, 1925, the commissioners filed in°the court their assessment roll of benefits and damages, and on August 5, 1925, entered into contracts for doing the work of the district. All those things had been done before the petition to abandon the work and abolish the district was filed.

Counsel for appellants earnestly argue that to permit the making of contracts before confirmation of the assessment roll will open the door to fraud. We are unable to concur in this view. The estimated cost beyond which the commissioners cannot go is found by the court in the organizing of the district. This order is entered after a hearing on the report of the commissioners, at which the property owners may appear and be heard. At the time of such hearing the property owners learn the estimated total cost, and if the required number wish the commissioners to dissolve the district they have an opportunity to do so before the assessment roll is made. We are unable to see wherein opportunity for fraud is in any way enhanced by this holding.

We hold that the commissioners had authority to enter into the contracts on August 5, 1925, and the county court did not err in denying the prayer of appellants' petition to abandon the work and abolish the district.

In view of the decision we have reached above it is not necessary to consider any of the other questions raised by appellants, and for that reason we will not consider them.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Per CURIAM: A rehearing having been allowed, this cause has received further consideration, and we adhere to the above opinion as originally filed.